[Crim. No. 488.   Department Two.—May 31, 1899.]

124   551
e145   739
145   740

## THE PEOPLE, Respondent, v. FRANK A. LEWIS, Appellant.

CRIMINAL LAW—HOMICIDE—MANSLAUGHTER—APPEAL—CONFLICTING EVIDENCE.—Upon appeal from a conviction of manslaughter, where the evidence conflicts, and there is evidence sufficient to sustain the verdict, the right and province of the jury to determine the credibility of the witnesses and to discredit evidence for the defendant contradictory to that for the prosecution, cannot be questioned in this court.

ID.—REFUSAL TO ADVISE JURY TO ACQUIT—EXCEPTION—REVIEW UPON APPEAL.—No exception is authorized to a refusal of the court at the request of the defendant to advise the jury to acquit the defendant; and a review of such refusal can go no further than to determine whether there was an absence of any substantial evidence as to some fact that the prosecution was bound to prove.

ID.—PERMISSION TO SUPPLY DEFECT.—Where the defendant does not submit the case at the close of the evidence for the prosecution, the court may properly allow the prosecution, on just terms, to supply a defect in its evidence at any time before the final submission of the case.

ID.—CONTRIBUTORY KILLING—ACCELERATION OF DEATH BY SELF-INFLICTED WOUND.—Where the jury were authorized to find from the evidence that a gunshot wound fired by the defendant upon the deceased was mortal, and that it contributed to his death, the fact that the deceased inflicted upon himself thereafter a knife wound in his throat, which was also mortal, and which accelerated his death, cannot relieve the defendant of responsibility for the death.

ID.—OPENING STATEMENT OF PROSECUTING ATTORNEY.—An opening statement of the prosecuting attorney that he expected to prove that the defendant himself did the cutting of the throat of the deceased, which may have been made in good faith, and with the intent to attempt its proof, does not amount to misconduct to the prejudice of the defendant, where no such proof was presented; but the proposal and failure of such proof rather tended to weaken the case for the prosecution.

ID.—REOPENING OF EVIDENCE FOR PROSECUTION—IRREGULARITY NOT PREJUDICIAL.—The permission of the prosecution to reopen its case after the defendant had closed his evidence, to prove by the son of the defendant the self-infliction of the knife wound by the deceased, though an irregularity, was not important to the prosecution, nor prejudicial to the defendant.

ID.—REFUSAL OF INSTRUCTION—CAUSE OF DEATH.—A requested instruction that if the jury found it impossible to tell whether the de-

ceased died from the wound in his throat or from the gunshot wound in the abdomen they were bound to acquit, was properly refused, as ignoring the proposition that both might have contributed to the death, which the jury could have found from the evidence.

APPEAL from a judgment of the Superior Court of Shasta County and from an order denying a new trial. Edward Sweeney, Judge.

The facts are stated in the opinion of the court in this case, and upon the former appeal, reported in 117 Cal. 186.

Henry E. Highton, and Theodore J. Roche, for Appellant.

Tirey L. Ford, Attorney General, for Respondent.

TEMPLE, J.—The defendant was convicted of manslaughter and appeals from the judgment and from an order refusing a new trial. It is his second appeal. The main facts are stated in the decision of the former appeal, *People v. Lewis,* 117 Cal. 186; 59 Am. St. Rep. 167.

Since, however, it is now claimed that the people failed to overcome the presumption of innocence upon the last trial, it may be noted that the jury in the proper exercise of their functions may have found the facts to be much less favorable to the defendant that the statement contained in the opinion on the former appeal. It was within their province to reject some testimony, and to accept such as to them seemed credible. For instance, they may have rationally concluded from the evidence that Lewis did not, in the altercation, say that he did not question the veracity of Farrell, but that, on the other hand, when asked by Farrell whether his word was not good, replied, "No, not with me," and that when this was resented he jumped up from the table and drove Farrell from the house; that Farrell fled before him until out of doors he took up a singletree and challenged Lewis to come out and fight, and did not advance or threaten to strike otherwise than by such challenge, and that thereupon Lewis, being in no danger whatever, raised his rifle to his shoulder, and with the remark, "Damn you, I'll teach you to fight me," he fired the fatal shot, and soon after, when his wife asked some one to go for a doctor,

he said, "Don't go for a doctor; damn him, let him die." All contradictory evidence may well have been discredited. As has often been stated, this court has no jurisdiction of criminal cases on questions of fact, and, consequently, I fail to see why there should have been a hundred pages of printed brief, carefully reviewing the testimony, witness by witness, showing what contradictory statements were made by some of them—that some had evidently been drilled, or for various reasons the testimony of some of the witnesses for the prosecution was entitled to less credence than the testimony for the defense.

Even if, at the conclusion of the evidence ·for the prosecution the defense asked the court to advise the jury to acquit, and the request was refused, and such refusal could be reviewed here, such review would only go to the extent of determining whether there was an absence of any substantial evidence as to some fact that the prosecution was bound to prove. I know of no mode by which it can be made proper for this court to enter upon such a minute inquiry as to the value of the testimony and the credibility of the witnesses as we are invited to in this case.

But I think no exception is authorized to a refusal of the court to give such advice. Had it been given, the jury would not be bound to obey it. If the defense was satisfied that there was a total lack of evidence upon some essential issue, it could have submitted the case upon the evidence of the prosecution. But as it did not do so, it was proper for the court, on just terms, to allow the defect to be supplied at any time before the final submission of the case. (See Pen. Code, secs. 1118, 1170, et seq.)

Upon a motion for a new trial questions of law may be presented in regard to the legal sufficiency of the evidence, and such questions may be reviewed here. In fact, in this case the only substantial questions presented are so presented, but their consideration does not require this elaborate consideration and discussion of the evidence.

The evidence upon which these points are based is not conflicting, and, of course, there is no substantial disagreement in regard thereto. But for the considerations presented in these few propositions, really constituting but one point, we may as-

sume, and the fact is, that the evidence abundantly sustains the verdict.

Defendant and deceased were brothers-in-law, and not altogether friendly, although they were on speaking and visiting terms. On the morning of the homicide the deceased visited the residence of the defendant, was received in a friendly manner, but after a while an altercation arose, as a result of which defendant shot deceased in the abdomen, inflicting a wound that was necessarily mortal. Farrell fell to the ground, stunned for an instant, but soon got up and went into the house, saying: "Shoot me again; I shall die anyway." His strength soon failed him and he was put to bed. Soon afterward, about how long does not appear, but within a very few minutes, when no other person was present except a lad about nine years of age, nephew of the deceased and son of the defendant, the deceased procured a knife and cut his throat, inflicting a ghastly wound, from the effect of which, according to the medical evidence, he must necessarily have died in five minutes. The wound inflicted by the defendant severed the mesenteric artery, and medical witnesses testified that under the circumstances it was necessarily mortal, and death would ensue within one hour from the effects of the wound alone. Indeed, the evidence was that usually the effect of such a wound would be to cause death in less time than that, but possibly the omentum may have filled the wound, and thus, by preventing the flow of the blood from the body, have stayed its certain effect for a short period. Internal hemorrhage was still occurring, and, with other effects of the gunshot wound, produced intense pain. The medical witnesses thought that death was accelerated by the knife wound. Perhaps some of them considered it the immediate cause of death.

Now, it is contended that this is a case where one languishing from a mortal wound is killed by an intervening cause, and, therefore, deceased was not killed by Lewis. To constitute manslaughter, the defendant must have killed some one, and if, though mortally wounded by the defendant, Farrell actually died from an independent intervening cause, Lewis, at the most, could only be guilty of a felonious attempt. He was as effectually prevented from killing as he would have been if some

obstacle had turned aside the bullet from its course and left Farrell unwounded. And they contend that the intervening act was the .cause of death, if it shortened the life of Farrell for any period whatever.

The attorney general does not controvert the general proposition here contended for, but argues that the wound inflicted by the defendant was the direct cause of the throat cutting, and, therefore, defendant is criminally responsible for the death. He illustrates his position by supposing a case of one dangerously wounded and whose wounds had been bandaged by a surgeon. He says, suppose through the fever and pain consequent upon the wound the patient becomes frenzied and tears away the bandage and thus accelerates his own death. Would not the defendant be responsible for a homicide? Undoubtedly he would be, for in the case supposed the deceased died from the wound, aggravated, it is true, by the restlessness of the deceased, but still the wound inflicted by the defendant produced death. Whether such is the case here is the question.

The attorney general seems to admit a fact which I do not concede, that the gunshot wound was not, when Farrell died, then itself directly contributory to the death. I think the jury were warranted in finding that it was. But if the deceased did die from the effect of the knife wound alone, no doubt the defendant would be responsible, if it was made to appear, and the jury could have found from the evidence, that the knife wound was caused by the wound inflicted by the defendant in the natural course of events. If the relation was causal, and the wounded condition of the deceased was not merely the occasion upon which another cause intervened, not produced by the first wound or related to it in other than a casual way, then defendant is guilty of a homicide. But, if the wounded condition only afforded an opportunity for another unconnected person to kill, defendant would not be guilty of a homicide, even though he had inflicted a mortal wound. In such case, I think, it would be true that the defendant was thus prevented from killing.

The case, considered under this view, is further complicated from the fact that it is impossible to determine whether de-

ceased was induced to cut his throat through pain produced by the wound. May it not have been from remorse, or from a desire to shield his brother-in-law? In either case the causal relation between the knife wound and the gunshot wound would seem to be the same. In either case, if defendant had not shot the deceased, the knife wound would not have been inflicted.

Suppose one assaults and wounds another intending to take life, but the wound, though painful, is not even dangerous, and the wounded man knows that it is not mortal, and yet takes his own life to escape pain, would it not be suicide only? Yet, the wound inflicted by the assailant would have the same relation to death which the original wound in this case has to the knife wound. The wound induced the suicide, but the wound was not, in the usual course of things, the cause of the suicide.

Though no case altogether like this has been found, yet, as was to have been expected, the general subject has often been considered. In 1 Hale's Pleas of the Crown, 428, the law is stated. So far as material here, his views may be thus summarized: 1. If one gives another a dangerous wound which might by very skillful treatment be cured, and is not, it is a case of homicide; 2. If one inflicts a dangerous wound, and the man dies from the treatment, "if it can clearly appear that the medicine and not the wound was the cause of the death, it seems it is not homicide, but then it must appear clearly and certainly to be so"; 3. If one receives a wound, not in itself mortal, and fever or gangrene sets in because of improper treatment or unruly conduct of the patient, and death ensues, it is homicide, "for that wound, though it was not the immediate cause of his death, yet it was the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so, consequently, is *causa causati*"; 4. One who hastens the death of a person languishing with a mortal disease is guilty of a homicide, for the death is not merely by a visitation of Providence, but the hurt hastens it and the wrongdoer cannot thus apportion the responsibility, et cetera. It would make no difference, I presume, if the person killed was languishing from a mortal wound, rather than from an ordinary disease.

In *State v. Scates,* 5 Jones, 420, a child was found dead, badly burned, and with a wound from a blow on the head. The burning was admitted by defendant, but the blow was not, and it was not proven who inflicted it. The medical witness thought the burning was the primary cause of death, but the blow may have hastened it. The jury was told that if it was doubtful which was the immediate cause of death they must acquit, but if they found that the burning was the primary cause of death and the blow only hastened it they could convict.

The case was reversed, the appellate court holding that the blow might have been the independent act of another, and, if it hastened the death, it, and not the burning, was the cause of death.

In *Bush v. Commonwealth,* 78 Ky. 268, the deceased received a wound not necessarily mortal, and, in consequence, was taken to a hospital where she took scarlet fever from a nurse and died of the fever. The court said: "When the disease is a consequence of the wound, although the proximate cause of the death, the person inflicting the wound is guilty, because the death can be traced as a result naturally flowing from the wound and coming in the natural order of things; but when there is a supervening cause, not naturally intervening by reason of the wound, the death is by visitation of Providence, and not from the act of the party inflicting the wound. . . . . If the death was not connected with the wound in the regular chain of causes and consequences, there ought not to be any responsibility."

The last case, in my opinion, so far as it goes, correctly states the law. The facts of this case do not bring it strictly within any of the propositions found in Hale's Pleas of the Crown. The second and third propositions both predicate a wound not necessarily mortal. What the law would have been in the second case had the wound been mortal, and the applications has hastened the death, is not stated. It seems to me, however, the case of a person already languishing from a mortal wound is precisely that of one suffering from a mortal disease. Certainly the willful and unlawful killing of such a person would be a felony, and it cannot be true that the first offender

and the last can each be guilty of murdering the same man—if they had no connection with each other, and both wounds were not actively operating to produce death when it occurred.

But why is it that one who inflicts a wound not mortal is guilty of a homicide, if through misconduct of the patient or unskillful treatment gangrene or fever sets in, producing a fatal termination—when, if it can be clearly made to appear that the medicine and not the wound was the cause of the death, he is not guilty of a homicide? In each case if the wound had not been, the treatment would not have been, and the man would not then have died. In each case the wound occasioned the treatment which caused or contributed to the death. The reason, I think, is found in the words advisedly used in the last sentence. In the one case the treatment caused the death, and in the other it merely contributed to it. In one case the treatment aggravated the wound, but the wound thus aggravated produced death. In the other the wound, though the occasion of the treatment, did not contribute to the death, which occurred without any present contribution to the natural effect of the medicine from the wound. Take, for instance, the giving of a dose of morphine, by mistake, sufficient to end life at once. In such case it is as obvious that the treatment produced death as it would have been had the physician cut off his patient's head. But see *People v. Cook*, 39 Mich. 236; 33 Am. Rep. 380. In this case it appears that defendant has inflicted a dangerous wound, but it was contended by the defense that death was caused by an overdose of morphine. Defendant asked an instruction as follows: "If the jury believe that the injury inflicted by the prisoner would have been fatal, but if death was actually produced by morphine poisoning, they must acquit." The instruction was refused, but the jury were told that if the wound was not in itself mortal, and death was caused solely by the morphine, they must acquit. The action of the trial court was sustained, on the ground that a mortal wound had been given which necessitated medical treatment; that the physicians were competent and acted in good faith; and that it was not made clearly to appear that the morphine solely produced death, and that the wound did not at all contribute to the death at that time. Under the authorities this was equiva-

lent to a finding that the wound did not contribute to the death.

This case differs from that in this, that here the intervening cause, which it is alleged hastened death, was not medical treatment, designed to be helpful, and which the deceased was compelled to procure because of the wound, but was an act intended to produce death, and did not result from the first wound in the natural course of events. But we have reached the conclusion by a course of argument unnecessarily prolix, except from a desire to fully consider the earnest and able argument of the defendant, that the test is—or at least one test—whether, when the death occurred, the wound inflicted by the defendant, did contribute to the event. If it did, although other independent causes also contributed, the causal relation between the unlawful acts of the defendant and the death has been made out. Here, when the throat was cut, Farrell was not merely languishing from a mortal wound. He was actually dying—and after the throat was cut he continued to languish from both wounds. Drop by drop the life current went out from both wounds, and at the very instant of death the gunshot wound was contributing to the event. If the throat cutting had been by a third person, unconnected with the defendant, he might be guilty; for, although a man cannot be killed twice, two persons, acting independently, may contribute to his death and each be guilty of a homicide. A person dying is still in life, and may be killed, but if he is dying from a wound given by another both may properly be said to have contributed to his death.

Other points are raised by the defense. One is that the prosecuting attorney told the jury, in his opening, that he would prove that the defendant himself did the throat cutting. No evidence tending to establish this proposition was offered by the prosecution, and it is contended the defendant was prejudiced by this statement. We cannot say that the statement was not made in good faith and with the intent to attempt its proof. If so, it was not an abuse of his position by the prosecuting officer. It was made, not by the district attorney, but by an assisting attorney who probably was not as well advised of the case as he should have been. But the de-

fense could not have been prejudiced. It doubtless weakened the case for the prosecution which by the statement seemed to admit that such proof was essential to its case.

After the defense had closed the prosecution was permitted to call a witness to prove the facts concerning the knife wound. This had only been shown before by the medical witness who testified as to the wounds, and one witness who came in just as Farrell breathed his last and who spoke of the wounds. The witness called was the son of defendant, and he is strongly indorsed by the defense as a truthful witness. It appears that there was no other witness who could have testified to the occurrences at that time. The procedure was irregular, but the defense was certainly not injured thereby. In fact, I do not see that the evidence was at all important to the prosecution.

The court refused to instruct the jury as follows: "If you believe from the evidence that it is impossible to tell whether Will Farrell died from the wound in the throat, or the wound in the abdomen, you are bound to acquit." The instruction was properly refused. It assumed that death must have resulted wholly from one wound or the other, and ignored the proposition that both might have contributed—as the jury could have found from the evidence.

The other points are relatively trivial. I have examined them and cannot see how injury could have resulted, supposing the rulings to have been erroneous.

The judgment is affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.