[No. A066222. First Dist., Div. Five. Aug. 2, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
PRESTON LEE GARDNER, JR., Defendant and Appellant.

474

COUNSEL

Richard Zimmer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PETERSON, P. J.**—In this decision, we hold that a defendant who provokes a gun battle by shooting at a victim may be guilty of proximately causing the murder of the victim, even if the victim is killed by shots fired by a third party during the gun battle. We also hold that, in such a situation, CALJIC No. 8.12 is properly modified by deleting the requirement, imposed in other contexts, that the death of the victim result from a "reasonable" response by a third party to the defendant's acts. This reasonable response requirement is unnecessary and confusing. Derivative liability for homicide attaches under the provocative act doctrine, when the defendant's intentional provocative act proximately causes the death of a victim through the action of a third party.

I. FACTS AND PROCEDURAL HISTORY

Appellant and his companion, as well as the victim, were drug dealers in an area of Richmond notorious for drug dealing. Appellant and his companion, Mims, approached the victim on the street, either to rob him or to intimidate him into leaving their drug turf. Appellant drew his pistol for use against the victim, who ran away while appellant fired shots at him. While appellant was firing shots at the fleeing victim, yet another armed drug dealer in the area, Miller, apparently believed the shots were being fired at him, and also began firing his semiautomatic weapon in response, toward the area where appellant was shooting.

The victim was found by police at the scene, bleeding from three gunshot wounds. Two wounds, which were not fatal, were in his legs. The fatal wound was a shot in the back which perforated the victim's liver and exited through the front of the victim's chest. It is most likely given the fragment characteristics, site, and direction of the back wound that the fatal shot was fired by appellant, but the defense presented some scientific evidence that the fatal shot could have been fired by the third party, Miller, who thought appellant's shots were aimed at him and fired back.

An information charged appellant with the first degree murder of the victim, with the special circumstance that the murder was committed during a robbery. The prosecution sought the death penalty.

After a jury trial, the jury returned a verdict finding appellant guilty of second degree murder, and found true the allegation that appellant had used a firearm in the offense. The jury also acquitted appellant of robbery, but found him guilty of assault with a deadly weapon, and the possession of a firearm by an ex-felon. The trial court sentenced appellant to a total unstayed term of 19 years to life.

## II. DISCUSSION

For almost a century, California courts and the courts of other states have been struggling to define the contours of a defendant's criminal liability for a killing where the fatal wound is received not from the defendant, but from another person in response to the defendant's provocative acts. For the most part, the evolution of this criminal liability has been influenced by other legal doctrines which are not directly applicable here—such as the felony-murder rule or vicarious liability for the acts of a coconspirator or aider and abettor, although there are a few decisions which find a defendant criminally liable outside the bounds of those other doctrines and simply as the proximate cause of the victim's death, as we do here. A brief review of the case law is necessary in order to understand the proper application of proximate cause principles in this context.

We must begin at the end of the 19th century. In *People* v. *Lewis* (1899) 124 Cal. 551 [57 P. 470] (*Lewis*), the defendant had been found liable for manslaughter as the proximate cause of the death of his brother-in-law, even though the shot fired by the defendant was not necessarily the cause of the victim's death. The defendant had, during a quarrel, fired on his brother-in-law and struck him in the intestines, delivering a wound which was very painful and which would, given the medical practices of the time, have eventually been mortal. The victim realized the wound would eventually be mortal and slit his own throat with a knife, dying soon thereafter. It was argued on appeal that the defendant, therefore, could not be guilty of a homicide because the victim killed himself. (*Id.* at pp. 554-555.)

Justice Temple affirmed the conviction, holding a defendant could be liable for a homicide where the death of the victim resulted from a fatal knife wound self-administered in response to, and caused by, the defendant's gunfire: "[I]f the deceased did die from the effect of the knife wound alone, no doubt the defendant would be responsible, if it was made to appear, and

the jury could have found from the evidence, that the knife wound was caused by the wound inflicted by the defendant in the natural course of events. If the relation was causal, and the wounded condition of the deceased was not merely the occasion upon which another cause intervened, not produced by the first wound or related to it in other than a causal way, then defendant is guilty of a homicide." (*Lewis, supra,* 124 Cal. at p. 555.) Under *Lewis,* appellant here could be criminally liable for the homicide of the victim, even if appellant did not administer the fatal wound, provided the fatal wound was "caused . . . in the natural course of events" by appellant's acts in firing on the victim.

We see the same result a couple of decades later, in *People* v. *Fowler* (1918) 178 Cal. 657 [174 P. 892] (*Fowler*). In *Fowler,* our Supreme Court upheld the defendant's conviction for first degree murder, even though it was unclear whether death resulted directly from a wound administered by the defendant, or resulted from the action of a third party in running over the victim who was sprawled wounded on a road. (Pp. 660, 669.) The high court indicated the defendant's criminal liability "would be similar to many that are given in the books where the defendant was held responsible for the natural and probable result of his unlawful acts." (*Id.* at p. 669.) "For these reasons we conclude that the instruction was not erroneous and that the claim that the death might possibly have been caused by the wheel of an automobile was not sufficient to exonerate the defendant from the charge." (*Id.* at p. 670.) Similarly, in the present case, appellant could be liable for the murder of the victim if the victim's death was the natural and probable consequence of the lethal acts in which appellant intentionally engaged.

In a number of subsequent decisions, our Supreme Court also addressed this point, often in the context of or against the background of the limits of the felony-murder rule. Thus, in *People* v. *Washington* (1965) 62 Cal.2d 777, 781-783 [44 Cal.Rptr. 442, 402 P.2d 130], Chief Justice Traynor's opinion held that a robber was not liable for murder under the felony-murder rule where one of the robber's accomplices was killed by a *victim* of the robbery, since the murder was not perpetrated by the robber and the implied malice necessary for murder was not attributable to him. However, Chief Justice Traynor also observed, in dicta, that the felony-murder doctrine was certainly not the only method of attaching murder liability on those who fire weapons and provoke a gunfight in which another person is killed: "Defendants who initiate gun battles may also be found guilty of murder if their victims resist and kill." (*Id.* at p. 782.)

Chief Justice Traynor expanded upon this dicta a few months later in *People* v. *Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365]

(*Gilbert*) (judgment vacated on other grounds (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]). In *Gilbert*, our high court reversed a felony-murder conviction because the victim was an accomplice, as in *Washington*, *supra*, and sent the case back for retrial on proper legal principles. (63 Cal.2d 703-704.) The high court first noted that a murder conviction requires proof of malice, which may be shown when the defendant for a base or antisocial motive does an act that involves a high probability it will result in death; the high court quickly concluded: "Initiating a gun battle is such an act." (*Gilbert*, *supra*, 63 Cal.2d at p. 704.)

The high court also observed that the death of the victim must be "attributable" to the act of the defendant or an accomplice: "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice." (*Gilbert*, *supra*, 63 Cal.2d at pp. 704-705.)

The high court subsequently clarified these principles in *Pizano v. Superior Court* (1978) 21 Cal.3d 128 [145 Cal.Rptr. 524, 577 P.2d 659] (*Pizano*). In *Pizano*, the defendant and an accomplice robbed the home of a victim. Fearing that the police had been called, they took the robbery victim hostage and used him as a human shield during their getaway. A third party, a neighbor, who did not know the victim had been taken hostage and was being used as a shield, fired at the robbers and killed the victim. (*Id.* at p. 132.) The high court held, after reviewing *Gilbert*, *supra*, that the defendant could be tried for murder in the death of the victim on a proximate cause theory, even though the fatal shot was fired by a third party. (*Pizano*, *supra*, 21 Cal.3d at pp. 136-139.)

In so ruling, the high court rejected the defense theory that the chain of causation was necessarily broken because the neighbor's shots were not the result of a "reasonable response" by the third party to the acts of the defendant. "The People contend that the question whether a killing was 'in reasonable response' to the malicious conduct should be treated as 'an objective proximate cause determination, and not a subjective response

determination.' They argue that the use of the term 'independent intervening cause' in the same passage indicates that the *Gilbert* court had proximate cause in mind. [¶] The use of that term does appear to so indicate for this court subsequently stated in *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 583 [91 Cal.Rptr. 275, 477 P.2d 131], that '[i]f the trier of fact concludes that . . . [the] death [of one of the robbers] *proximately resulted* from acts of petitioner's accomplices done with conscious disregard for human life, the natural consequences of which were dangerous to life, then petitioner may be convicted of . . . murder.'" (*Pizano*, *supra*, 21 Cal.3d at pp. 137-138, italics and brackets (except first) added by *Pizano* court, fn. omitted.)

Thus, as clarified in *Pizano*, the term "reasonable response," which the *Gilbert* court used to delineate the scope of murder liability, was simply a shorthand way of expressing the principle that the killing must, on an objective view of the facts, be proximately caused by the acts of the defendant. This holding is entirely consistent with the more recent observations of our Supreme Court in *People* v. *Roberts* (1992) 2 Cal.4th 271 [6 Cal.Rptr.2d 276, 826 P.2d 274] (*Roberts*). The facts of *Roberts* were bizarre: One prison inmate was stabbed by a number of other inmates; mortally wounded, the stabbed inmate picked up a knife left by one of his assailants and, encountering a prison guard, stabbed the guard to death while the inmate was "unconscious" in the course of a "purely reflexive" struggle. (P. 321.) Our high court found the evidence sufficient to hold the defendant liable for the murder of the prison guard on a proximate cause theory, even though the guard was stabbed by the victim of the defendant's stabbing: "We hold there was sufficient evidence of proximate cause for the jury to decide that liability attached for defendant's acts." (*Ibid.*) Although the chain of causation between the defendant's act in stabbing the inmate, and the inmate's act in stabbing the guard, was somewhat attenuated, it was a jury question whether murder liability could attach for the death of the guard: "After considerable reflection, however, we conclude that the evidence sufficed to permit the jury to conclude that [the guard's] death was the natural and probable consequence of defendant's act." (*Ibid.*)

It is, therefore, clear that a defendant may be liable for murder, as here, for a killing when his acts were the "proximate cause" of the death of the victim, even though he did not administer the fatal wound. Our Supreme Court has also phrased this same requirement of "proximate cause" interchangeably, on the same page, with the question of "natural and probable consequence" (see *Roberts*, *supra*, 2 Cal.4th at p. 321); our Supreme Court has further indicated that the phrase "reasonable response" was simply a shorthand phrase for this same determination of objective proximate cause (see *Pizano*, *supra*, 21 Cal.3d at pp. 137-138).

■ Appellant contends the jury instructions relating to proximate cause were erroneous, in that they omitted the concept of reasonable response by a third party as a necessary link in the chain of causation leading to the killing of the victim. The trial court modified the standard instruction, CALJIC No. 8.12, at the prosecutor's request, to delete the "reasonable response" requirement in light of the facts of this case. Appellant contends the jury may have convicted him of second degree murder only because the victim was killed by a bullet fired by the third party, Miller, rather than by appellant; appellant also contends he cannot be responsible as the proximate cause of a killing which occurred because Miller unreasonably responded to appellant's gunfire by returning fire.

The standard instruction on vicarious liability for a killing resulting from the acts of another, CALJIC No. 8.12, as given in this case, stated in relevant part as follows, with brackets indicating words the trial court properly deleted from the pattern instruction: "A homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in [a reasonable] response to an intentional provocative act by a perpetrator of the crime, is considered in law to be an unlawful killing by the perpetrator of the crime." The jury was also properly instructed by the trial court that the defendant would be liable for a killing only if he committed an "intentional provocative act" whose "natural consequences are dangerous to human life." Finally, the instructions also required that the killing must be proximately caused by the intentional and dangerous acts perpetrated by a defendant, consistent with the recent holding of our Supreme Court in *Roberts, supra,* 2 Cal.4th at pages 317-319. The instructions fit the facts of this case and followed the holdings of *Pizano, supra,* and *Roberts, supra*; there was no error.

When a defendant commits assault with a deadly weapon on a victim by firing upon him, and this act causes another person to believe he is being fired upon and therefore to return the gunfire, the defendant may be guilty of proximately causing the death of the victim in the gun battle, whether the victim is killed by the defendant's bullets or the third party's. In such circumstances, there is no need to prove that the third party's response was reasonable in returning the gunfire. (See *Pizano, supra,* 21 Cal.3d at pp. 136-139.) The jury was, therefore, properly instructed on proximate cause, since in *Pizano* our Supreme Court reviewed the case law concerning a killing which occurs in a gun battle, and found there was no requirement that the killing result from a reasonable response by the actual shooter, in order to hold the defendant liable for the murder as the proximate cause of the gun battle.

As *Pizano* made clear, the "reasonable response" rubric arose from a misinterpretation of certain language in *Gilbert*, *supra*, 63 Cal.2d at pages 704-705: "*Gilbert* does not state that the only circumstance in which a killing is attributable to the malicious act of the defendant or his accomplice is when the third person's action is a reasonable response to that act." (*Pizano*, *supra*, 21 Cal.3d at p. 138.) Instead of limiting murder liability to killings resulting from a simple rule of thumb, such as a "reasonable response" by a third party, the high court indicated murder liability must be decided according to broader principles of proximate cause: "Proximate cause problems in criminal cases cannot be solved by applying a simple rule-of-thumb applicable to every conceivable fact situation." (*Ibid.*)

Moreover, the term "reasonable response" is obviously much more vague and ambiguous than the carefully delineated language of proximate cause or natural and probable consequence. Without the clarification offered to us in *Pizano*, there would be some danger that the term might be taken to mean that liability for murder could only attach on the facts of this case if the acts of the third party, Miller, who fired in response to appellant's gunfire were *subjectively* reasonable. We, therefore, lament the inclusion of the phrase, torn from its proper context and the explanatory material provided in *Pizano*, in the standard jury instruction on murder liability for the acts of another, CALJIC No. 8.12. CALJIC No. 8.12 is misleading in this respect, because it simply parrots the language of *Gilbert* without regard to the subsequent clarification of that language in *Pizano*, *supra*, 21 Cal.3d at pages 137-138. The use of this "reasonable response" phrase, which is a legal term of art equivalent to "proximate cause," could only serve here to confuse a lay jury; the subject of proximate cause is now fully and properly covered by other instructions given here, such as CALJIC No. 3.40 (1992 rev.), which we discuss below. We urge the revision of CALJIC No. 8.12 to eliminate the ambiguous word "reasonable" prefacing the word "response" and believe the word "reasonable" should have been deleted by the trial court, as it was here.

Appellant insists, however, that because the "reasonable response" formulation used in *Gilbert* was not given here the conviction must be reversed. Our Supreme Court explained in *Pizano*, *supra*, that the "reasonable response" phraseology was not required and need not be used in a case where it would be inapposite, as where the killing results from an instinctive and unreasoning response to the defendant's dangerous provocation. (21 Cal.3d at p. 138.) In *Roberts*, *supra*, our Supreme Court indicated the proper test is one of proximate cause and natural and probable consequences. (2 Cal.4th at pp. 317-319.) Our Supreme Court also approved the rationale of *Madison* v. *State* (1955) 234 Ind. 517 [130 N.E.2d 35, 38], where the Indiana Supreme

Court dealt with a second degree murder conviction in a killing which resulted when a third party acted "impulsively" rather than reasonably in kicking toward the victim a live grenade tossed by the defendant toward the third party. (*Roberts*, *supra*, 2 Cal.4th at pp. 319, 320.)

 Here, as in *Pizano* and *Madison*, the defendant was guilty of murder if his intentional and provocative act in firing down the street at the fleeing victim proximately caused an instinctive, rather than reasonable, reaction in which a third party fired back, killing the victim as a natural and probable consequence of appellant's initial lethally dangerous assault on the victim. (See also *People* v. *Caldwell* (1984) 36 Cal.3d 210, 222-223 [203 Cal.Rptr. 433, 681 P.2d 274] [Liability for murder was upheld where the defendant's lethal acts in precipitating a gun battle were the proximate cause of the death of the victim, which was a natural and foreseeable result.]; *In re Joe R.* (1980) 27 Cal.3d 496, 506, fn. 6 [165 Cal.Rptr. 837, 612 P.2d 927] ["Thus, when a third party shoots and kills a robber's hostage, the robber is guilty of murder regardless of the motive behind the bullet."]; *People* v. *Harris* (1975) 52 Cal.App.3d 419, 427 [125 Cal.Rptr. 40] ["The determination of whether defendant's unlawful act or acts were a proximate cause of the death is a question for resolution by the trier of fact [citation] and is determined according to the ordinary principles governing proximate causation."].)

When we analyze the instructions given to the jury as a whole against the instructions which appellant sought, it appears appellant and the trial court were not really so far apart on the issue of proximate cause. Appellant does not dispute that the word "reasonable" may be deleted before the word "response" if the jury is otherwise properly instructed on proximate cause. The instructions as given by the trial court do adequately cover the evidence and the points appellant sought to make at trial.

For instance, the trial court explicitly added to CALJIC No. 8.12 the requirement that the provocative act of the defendant must be "a proximate cause of the death of another person." The trial court also used CALJIC No. 3.40 (1992 rev.) to instruct the jury that the defendant would only be liable for murder if he committed "an act or omission that set[] in motion a chain of events that produce[d] as a direct, natural and probable consequence of the act or omission the death of [the victim] and without which the death of [the victim] would not occur." Appellant concedes this is a correct statement of the law which, standing alone, might have properly defined his criminal liability for the death of the victim.

The trial court also explicitly warned the jury that, "For proximate cause to exist, the actual cause of the death of another person must not be so

remote as to fail to constitute the natural and probable consequence[] of the defendant's act. [Citation.] The death of another person cannot be the natural and probable consequence of the defendant's act, if the death of another person was unforeseeable." Appellant does not dispute the correctness of this statement as a matter of law; it is drawn from *Roberts, supra,* 2 Cal.4th at pages 321-322. However, he *criticizes* this instruction because it is somewhat unclear, using a double negative to define appellant's criminal liability. He would prefer a more explicit statement of the fact that the death of the victim must be a foreseeable result of the acts of the defendant. We agree this sentence could profitably have been rewritten for inclusion in a jury instruction to read, "The death of another person must be foreseeable in order to be the natural and probable consequence of the defendant's act." However, the instruction as given does state that, if the jury concludes the death of the victim was unforeseeable, appellant cannot be guilty of murder. We find no reasonable possibility that the verdict would have been different if this requirement were rephrased in more positive terms. (See *People* v. *Wharton* (1991) 53 Cal.3d 522, 571-572 [280 Cal.Rptr. 631, 809 P.2d 290].)

We also note that the trial court properly instructed the jury as follows: "An intervening act may be so disconnected and unforeseeable as to be a superseding cause, so that in such a case the defendant's act will be a remote and not a proximate cause." Thus, the jury was again told that, if Miller's acts were unforeseeable when he fired in response to appellant's gunfire, then appellant was not the proximate cause of that gunfire. The jury was, therefore, properly instructed that the criminal liability of appellant for the natural and probable consequences of his intentional lethal acts were measured by proximate cause, not the reasonableness of the actions of a third party. (See *Pizano, supra,* 21 Cal.3d at pp. 137-138.)

These instructions are also entirely consistent with, and are drawn from, the recent decision of our Supreme Court in *Roberts, supra,* 2 Cal.4th at pages 321-322. Under these instructions, it simply became a jury question whether the death of the victim was proximately caused by the provocative act of the defendant or by some other superseding cause, such as an unforeseeable and unreasonable act of a third party. We see no likelihood the jury was at all misled in this case.[1]

---

[1]Appellant also challenges the trial court's decision to give instructions on aiding and abetting; but these instructions were proper with reference to the acts of Mims, who was contended to be appellant's accomplice in aiding the perpetration of the charged robbery.

III. DISPOSITION

The judgment of conviction is affirmed.

King, J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 1, 1995.