Filed 5/5/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B338531 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA482493 |
| MARK ANTHONY MIJARES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Conviction affirmed and remanded with instructions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Mark Mijares's methamphetamine addiction led to delusions and to his fatal attack on an infirm stranger named Juan Cordova. Cordova lingered in the hospital before dying. The jury convicted Mijares of murder. Mijares's main argument on appeal is that the trial court erred by failing to instruct on *attempted* murder. Mijares's claim is that he did not kill the victim because Cordova already was in such bad shape that, in the hospital, he actually died from his preexisting heart and liver disease. We affirm because Mijares's attack caused Cordova's death. We also reject Mijares's other claims, except we correct his sentencing credits as the parties recommend.

I

Mijares's long-term addiction had deepened into psychosis. His diagnosis was "substance-induced psychotic disorder." By his mid-forties, Mijares had trouble distinguishing reality from his hallucinations. Before killing Cordova, Mijares took methamphetamine for a week straight and, for that week, he did not sleep. In a delusional state, Mijares went to a health clinic parking lot on October 26, 2019. There, for some reason he fixated on Cordova, who was elderly, homeless, and in poor health. A witness said Cordova was "helpless."

Mijares began by shouting at Cordova, "I'm going to take you out." Then Mijares pummeled Cordova with a brick, punched him, and kicked him. Next Mijares covered Cordova's head with a plastic bag. Cordova made choking sounds. Finally Mijares stabbed Cordova in the neck. The attack broke Cordova's face bones.

Mijares's attorney described the video of the attack to the jury. "There are times in that video where it almost looks as awful as it is to watch. There are times when it looks like

[Mijares is] believing he is at a baseball game. There's a portion in the video before he throws the rock where he is looking around. He puts the rock behind his back, and he is almost taking, like, a pitcher's wind up and throws it."

Cordova did not fight back.

In the hospital, Cordova expired after about a month, on November 28, 2019. He never regained consciousness.

Cordova had grave liver and heart issues. The coroner testified as follows:

"Q: Assuming Mr. Cordova did not sustain the blunt force trauma or what you've described as the knife wounds, do you believe you have the background, training, and experience to offer an opinion as to what his life expectancy would have been with the liver and heart issues?"

…

"A: My opinion is, your honor, that he – his condition was very, very bad. He would die very soon.

"Q: Can you quantify?

"A: Less than three or four years he would be dead due to the extent of both diseases.

"Q: And the basis for your opinion?

"A: The basis of the examination of the body and the extent of both diseases.

"Q: So is it fair for us to take from what you just said that absent these wounds he had a medical likelihood of surviving at least another three or four years?

"A: Yes, sir."

The coroner testified the cause of Cordova's death was blunt force trauma as well as "the injury by knife to his neck." It was "the accumulation of those injuries."

The court instructed jurors that, to find Mijares guilty of first degree murder, they had to find (with our emphasis) that he "committed an act that *caused* the death of another person. . . . There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death."

The jury convicted Mijares of first degree murder.

## II

Mijares has four arguments on appeal. Three lack merit, but we agree with the prosecution that Mijares's point about presentence custody credits is valid.

## A

Mijares's primary argument is that the trial court had a duty on its own motion to instruct the jury on *attempted* murder. This duty would arise if an element of the murder charge were missing and substantial evidence supported the lesser included offense of attempted murder. (See *People v. Landry* (2016) 2 Cal.5th 52, 96.) We independently review questions of instructional error. The trial court has a duty to instruct on all theories of a lesser included offense that find substantial support in the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

Mijares contends a reasonable juror could have "found room for reasonable doubt that [Mijares] was the *proximate cause* of Cordova's death." The italics are ours. Mijares's logic is that, if the jury concluded he did *not* kill Cordova, then the appropriate lesser included offense would have been attempted murder. Mijares thus argues that, by failing to instruct on attempted

murder, the court erred.  Mijares does not challenge the wording of instructions the court did give.

Given Mijares's invocation of *proximate cause*, we summarize pertinent law to pinpoint his precise challenge.

Principles of causation apply to crimes as well as torts. Causation is an essential element of murder.  Causation has two components.  One is cause in fact, which is also called actual, direct, or but-for causation.  The second component focuses on public policy considerations and imposes an additional limitation related to the degree of connection between the conduct and the injury.  (*People v. Carney* (2023) 14 Cal.5th 1130, 1137–1138 (*Carney*).)

We treat these two components of causation in turn.

First, "but-for causation" is fundamental but sweeping.  *But for* Adam and Eve, there would be no crime at all.  (Cf. Prosser, *Palsgraf Revisited* (1953) 52 Mich. L. Rev. 1, 24 (*Prosser*) ["in a very real sense the consequences of an act go forward to eternity, and back to the beginning of the world"].)

When there is evidence of concurrent causes, the defendant's act must have been a substantial factor contributing to the result and not simply an insignificant or merely theoretical factor.  (*Carney*, *supra*, 14 Cal.5th at p. 1138.)  A jury need not determine which of the concurrent causes was the principal or primary cause of death so long as it finds the death would not have occurred when it did without the criminal act.  (*Id.* at p. 1139.)

Second, "proximate cause" employs public policy considerations to draw the outer boundary of liability for a tort or crime.  This limitation is a judge-made boundary administered on a case-by-case basis.

The classic illustration of the proximate cause limitation was in a tort case: the Cardozo opinion in *Palsgraf v. Long Island Railroad Co.* (1928) 248 N.Y. 339, 162 N.E. 99 (*Palsgraf*). Helen Palsgraf was on a train platform when a man carrying an innocuous-looking package rushed to get on a moving train. Railroad guards helped him board, but their efforts dislodged his package. Surprisingly, the package contained fireworks, which exploded on the track. "The shock of the explosion threw down some scales at the other end of the platform, many feet away. The scales struck the plaintiff, causing injuries for which she sues." (*Id.* at p. 341.) Justice Cardozo authored the landmark opinion holding the actions of the railroad workers were *not* the proximate cause of Palsgraf's injuries. (*Id.* at p. 346.)

The *Palsgraf* holding is best explained, Dean Prosser submitted, by the fact that "what did happen to [Helen Palsgraf] is too preposterous. Her connection with the defendant's guards and the package is too tenuous; in the old language, she is too remote. The combination of events and circumstances necessary to injure her is too improbable, too fantastic . . . . [L]iability must stop somewhere short of the freakish and the fantastic." (*Prosser, supra,* at p. 27.)

The same principle applies in criminal law. Our Supreme Court held that a defendant's act of shooting a member of another gang did not proximately cause that member's fellow gang members to kill a member of the defendant's gang. (*People v. Cervantes* (2001) 26 Cal.4th 860, 872–874.) This intervening independent cause was unforeseeable because it was "an extraordinary and abnormal occurrence." (*Id.* at p. 871.) In so ruling, the high court reached its result as "a matter of law." (*Id.* at p. 874.)

6

Our high court reached the opposite result in *People v. Lewis* (1899) 124 Cal. 551, 554, where the defendant shot the victim in the intestines, dooming him to a painful and inevitable death that, "within a very few minutes," the victim hastened by suicide. The court *upheld* Lewis's conviction because the shooting was the proximate cause of the victim's death. (*Id.* at pp. 554–559.) There was nothing fantastic about death from a gunshot to the abdomen.

Similarly, if an assailant beats a man and leaves him unconscious in a road at night where a car accidentally hits and kills him, the assailant is the proximate cause of death. (*People v. Fowler* (1918) 178 Cal. 657, 668–670 (*Fowler*), disapproved on another ground in *People v. Thomas* (1945) 25 Cal.2d 880, 901.) Leaving your prone victim in a traffic lane invites more disaster.

We now apply this law to the case at hand. We begin by recounting Mijares's argument.

Mijares contends there was substantial evidence he committed only attempted murder: a jury reasonably could have concluded he attempted to murder Cordova, but failed because his attack was not the proximate cause of Cordova's death. Mijares claims the jury reasonably could have found he did not actually kill Cordova. Rather, heart and liver disease could have been the sole causes of the fatality. Mijares concedes there was substantial evidence he caused Cordova's death. His claim is, however, that there also was competing substantial evidence he did *not* cause the death, and that substantial evidence is enough to have required an instruction on attempted murder.

In this quest, Mijares highlights six facts from the coroner's testimony:

7

1. On account of heart disease and cirrhosis of the liver, Cordova's condition was "very, very bad."
2. Cordova "would die very soon" from his heart condition and his liver disease.
3. Hospital doctors repaired the cut artery on Cordova's neck.
4. For a time, Cordova was in stable but critical condition.
5. Cordova lasted slightly over a month after Mijares's attack.
6. Cordova "would have [had] a better chance of survival" had he been a healthy person.

Mijares suggests his attack was neither a but-for cause nor a proximate cause of Cordova's death.

Both suggestions fail.

As a factual matter, no evidence negated Mijares's attack as a substantial factor in Cordova's death. Cordova was seriously ill before Mijares's assault, but nothing proved or implied Cordova's preexisting afflictions would cause death in a month. The coroner testified the cause of Cordova's death was the wounds from Mijares. The evidence of but-for causation uniformly pointed to Mijares as the author of death.

As a matter of law, Mijares also was the *proximate* cause of Cordova's death. Many in the population are physically infirm. Their skulls may be as thin as an eggshell. Even so, attackers take their victims as they find them. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 964 [unless preexisting physical infirmities were the only substantial cause of death, these infirmities do not destroy a defendant's criminal responsibility].)

In sum, no evidence or consideration of public policy mandated an instruction on attempted murder, because there

was no question about what killed Cordova.  Mijares's attack was the *but for* cause of Cordova's death.  As for public policy considerations behind the *proximate cause* doctrine, Cordova's demise was hardly freakish or fantastic.  Mijares shouted "I'm going to take you out."  Then he did.

B

Mijares's second argument concerns the prosecutor's closing argument, which Mijares contends misstated the law.  The "apt" description of this type of argument is that the prosecutor committed "prosecutorial error."  (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

Mijares emphasizes the following language in this portion of the prosecutor's closing:

"The big difference here is whether or not he ***intended to kill*** someone.  ***So the real difference in murder – first-degree murder and second-degree murder is that intention to kill.***

"Think of a situation where an individual has a gun.  He is going after a specific person because that person wronged him, and he goes and ends up killing that particular person.  He has a reason to.  He makes that decision to kill the person, and you can show that he planned it out in some way, or based on his actions, he made that decision that he was ***intending to kill that person.***

"Now you have a situation of second-degree where you could have a person who has a gun, not trying to kill a particular person, but there's a group of people – 30 people.  He shoots into the crowd.  He's not trying to kill that one person, but he is doing an act that's inherently dangerous to human life.  ***So it wouldn't fit first-degree murder because he is not trying to kill one particular person.***  He is just doing something in which all of

9

these people are put in incredible danger, and that's the major distinction we have between first-degree murder and second-degree murder."

Mijares contends this argument was error because the difference between first and second degree murder is premeditation and deliberation, not the intent to kill.

This closing argument was not prosecutorial error. "Intent to kill" is a common but ambiguous phrase because there are four levels of intent: purpose, knowledge, recklessness, and negligence. (See *People v. Canales* (2024) 106 Cal.App.5th 1230, 1255–1256, 1261–1262.) Phrases like "criminal intent," "state of mind," "mens rea," and "mental state" are imprecise generalizations. They cover many levels of culpability. The exact degree of blameworthiness requires a more particular description, which is what the prosecutor proceeded to offer.

The prosecutor properly explained the concept of a *purposive* killing in common-sense terms. He gave his example of an individual with a gun "going after a specific person because that person wronged him, and he goes and ends up killing that particular person. He has a reason to. He makes that decision to kill the person, and you can show that he planned it out . . . ."

That indeed would be first-degree murder, because the killer had the premeditated *purpose* of killing. (See *People v. Pearson* (2013) 56 Cal.4th 393, 443–444; CALCRIM No. 521.)

The prosecutor also correctly explained second-degree murder with his example of shooting into a crowd of 30 people, "not trying to kill a particular person." Such a shooting indeed would be "inherently dangerous to human life."

A murder under these circumstances would be a textbook example of *reckless* murder, which is murder in the second

degree.  (E.g., *People v. Clark* (2016) 63 Cal.4th 522, 617 & fn. 73; *People v. Knoller* (2007) 41 Cal.4th 139, 152, 158.)

Mijares takes no issue with the court's instructions on first and second degree murder, which were CALCRIM Nos. 520 and 521.

The prosecutor's own remarks alerted jurors to the imprecision in the term "intent to kill."  The prosecutor reiterated CALCRIM Nos. 520 and 521 in his closing argument.  He added, "if you have any questions, you can always look at the instructions."  In his opening attack on the prosecutor's closing argument, Mijares omits mention of these points.

There was no prosecutorial error.

C

The prosecution did not oppose Mijares's request that we examine for an abuse of discretion the trial court's in-camera review of police records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.  We have done so and see no abuse of discretion.

D

All agree Mijares is entitled to 1,669 days of pretrial credit rather than the 1,637 days the trial court awarded.  The original figure was the result of a simple miscalculation by counsel.

## DISPOSITION

We affirm the conviction and remand for the limited purpose of correcting Mijares's pretrial credits to 1,669 days.

WILEY, Acting P.J.

We concur:

VIRAMONTES, J.　　　　SCHERB, J.

11