[No. A086570. First Dist., Div. Four. Sept. 26, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
KHYLE ARMANDO BRISCOE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through V.

COUNSEL

Lynne S. Coffin, Public Defender, under appointment by the Court of Appeal, and Harry Gruber, Deputy Public Defender, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald A. Engler and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

REARDON, Acting P. J.—Applying the provocative act murder doctrine, a jury convicted appellant Khyle Armando Briscoe of first degree murder, first degree robbery, and first degree burglary. It also found true a special circumstances allegation on the murder charge and firearm use allegations associated with all three offenses. (See Pen. Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(17), 211, 459; see also former §§ 190.2, as amended by Stats. 1995, ch. 478, § 2 [approved by voters Mar. 26, 1996], 12022.5, subd. (a)(1), as amended by Stats. 1995, ch. 377, § 9.) Briscoe was sentenced to an indeterminate term of life imprisonment without possibility of parole with an added four-year term for firearm use in the commission of the murder. He appeals, contending that (1) he was improperly convicted of murder with special circumstances under the provocative act murder doctrine; (2) the trial

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

court erred by admitting evidence of two statements he gave to police officers and by instructing the jury about admissions he made in those statements; (3) he was deprived of a meaningful opportunity to present a complete defense in violation of his constitutional rights to due process, compulsory process and confrontation; and (4) the trial court erred in imposing his sentence. We order the sentence on the robbery count be corrected and order correction of the abstract of judgment on the fines imposed, but otherwise affirm the judgment, including the life sentence.

## I. FACTS

On the night of April 2, 1998,[2] Alisha Rozadilla was alone at the Vacaville home of her boyfriend Ben Parovel. Shaun Pina and appellant Khyle Armando Briscoe knocked on the door, asking for Parovel. Frightened, Rozadilla armed herself with Parovel's nine-millimeter Beretta while she waited for him to return. When Parovel came home, the two men—acquaintances of his—entered the living room of the house with him. They told Parovel that they wanted to purchase marijuana. They appeared to be unarmed. Parovel—his back to Briscoe and Pina—took the Beretta from Rozadilla and hid it in his clothing.

Pina and Briscoe followed Parovel into a bedroom to get the marijuana. As Parovel was weighing out marijuana, Pina pulled out a gun—a 10-millimeter Glock semiautomatic pistol with a red laser beam on it—and relieved Parovel of his Beretta. Pina demanded money. Briscoe returned to the living room where Rozadilla had remained, held a .38-caliber handgun to her neck and asked her "Where's the gun, Bitch?" in a very loud tone of voice. When he satisfied himself that she was no longer armed, he asked where to find the money. She told him that she had no idea. He put her in a headlock—his arm underneath her chin—and walked her back to the bedroom where Parovel and Pina were. He had his gun pointed at her head.

In the bedroom, Pina and Briscoe continued to demand money from Parovel. He handed over about $1,500, but Pina wanted more. Parovel had almost $15,000 in cash hidden in the house—money given him in the form of a cashier's check that he had recently cashed. He induced Pina out of the bedroom on the pretext that he would show him where the money was. Parovel tried to run, but Pina grabbed his hooded shirt and yanked him back. He grabbed at Pina's Glock and the two men struggled for it. The gun fell and flew across the floor.

Briscoe—hearing the struggle—left Rozadilla in the bedroom and went to investigate. As Parovel struggled to get up and retrieve the Glock, Briscoe

[2]All dates refer to the 1998 calendar year.

entered the room holding the .38, then picked up the Glock and struck him in the head repeatedly with it. The magazine of the Glock fell out while Briscoe hit Parovel with it. Pina had Parovel's legs pinned and the three men struggled for several minutes.

Parovel was able to get free of Pina. The front door was open, so he ran outside with Briscoe on his back. Parovel and Briscoe continued to struggle over the Glock. Briscoe gained control of his .38. Parovel tripped, bringing Briscoe down with him. He grabbed for the .38 and the gun went off, shooting at the side of the house. When Parovel gained control of the .38, he started shooting, afraid for his life. He believed that Pina still had his Beretta and he was angry that the two men took his money. Briscoe was two feet away from him; Pina was on the driveway 13 or 14 feet away from where Parovel lay on the lawn.

Parovel shot Pina twice; the second shot made Pina drop. As Briscoe approached Pina, Parovel fled to a neighbor's house with the .38 to call the police. Parovel was bleeding from a cut on his head. He set down the .38 inside the neighbor's house. When he went outside again, Briscoe and Pina were gone.

Vacaville police responded to a report of a gunshot victim and found Pina lying on the ground, semiconscious and with a failing pulse. A wad of money totaling almost $1,400 was removed from his clothing. No marijuana was found in his pockets and no weapon was seen near the body. Pina was declared dead at the scene.

Knowing the police were coming, Parovel threw the marijuana, a scale and a magazine for his Beretta out of the house. He did not touch the Glock. The .38 he had left at his neighbor's house was later recovered by police. It contained five empty casings and one live round of ammunition. Police searched Parovel's house and found a 10-millimeter Glock pistol without a gun magazine and a gun magazine fitting the Glock inside the house. Two bullets were found, one in the driveway and one on the garage floor. They also found a scale.

Parovel first told police that Briscoe and Pina came to the house to play videotape games. Later, he told police the truth—that he was selling marijuana to them. He told police that he thought Nate Newman—who shared Pina's apartment—had set him up. Newman had sold him a quarter-pound of marijuana for $1,300 earlier that day. Parovel had heard that Newman had a Glock handgun.

On the night of April 2, Briscoe—with multiple gunshot wounds—was taken to a hospital. While lying on a gurney, he told police that he stood on

a Vacaville street when an unknown man pulled a gun on him. Briscoe said that he wrestled with the man until he broke away and ran from him. The man shot at Briscoe while he was lying on the ground. Briscoe told police that he flagged down a passing vehicle and got a ride to the hospital. A police officer administered a gunshot residue test. After a five- to 10-minute interview, Briscoe was taken into surgery. The police took his clothing as evidence. They found no weapons or marijuana on his person.

On the afternoon of April 4, Briscoe gave a second statement to police while in the hospital. A nurse advised a police officer that Briscoe was not under the influence of any medication that would cause him to be unable to answer questions. Briscoe seemed alert. They spoke for 20 to 25 minutes and the statement was tape-recorded.

In this statement, Briscoe admitted that he and Pina went to the Vacaville house of a man named Ben to purchase marijuana. He told police that Ben tried to rob them and that he shot at them. He learned from police that Pina was dead. Briscoe admitted that he had been carrying a .38-caliber revolver and that Pina was also armed with a Glock. He tried to tackle Ben, who was armed and whom Briscoe thought intended to kill him. Ben also tried to wrestle Pina's gun from Pina and Briscoe felt he had to stop Ben. Briscoe tried to help Pina, who was hit and collapsed. After the police told Briscoe that they knew that he and Pina intended to rob Ben, Briscoe admitted that he knew Ben had money.

Briscoe also told police that on the night of the shooting, a car was waiting for him containing Newman and another person. These two people brought him to the hospital. Newman had given Briscoe the .38 and had given Pina the Glock. Briscoe said that Newman wanted the robbery to occur that day. Newman was to get a third of whatever Briscoe and Pina recovered.

Briscoe was arrested and ordered held without bail. At the preliminary hearing, he objected to the admission of the April 4 statement that he gave to police as taken in violation of his *Miranda*[3] rights and as an involuntary statement. The magistrate denied the motion after conducting a suppression hearing. (See § 1538.5.)

On June 1, Briscoe was charged by information[4] with first degree murder of Pina, robbery of Parovel and Rozadilla, and burglary of Parovel's dwelling. The information alleged that the murder of Shaun Pina was committed

---

[3]*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[4]The felony complaint filed April 6 was deemed to be the information by stipulation of the parties.

in the commission of robbery and burglary and that Briscoe personally used a firearm in the commission of all three offenses. (See §§ 187, subd. (a), 190.2, subd. (a)(17), 211, 459; see also former §§ 190.2, 12022.5, subd. (a)(1).) Briscoe pled not guilty and denied all the enhancement allegations. His motion to dismiss the information and its special circumstances allegations was heard and denied. (See § 995.)

At trial, a forensic pathologist testified that Pina suffered two gunshot wounds. One of the bullets struck vital organs and proved to be fatal. A bullet was recovered from Pina's chest during an autopsy. His blood revealed evidence of marijuana in his system, but no alcohol or other drugs. Briscoe's tape-recorded statement to police was played for the jury. A criminalist testified that the bullet found in Pina's chest cavity was fired from Briscoe's .38-caliber revolver. None of the bullets found at the scene came from Pina's 10-millimeter Glock semiautomatic pistol.

Briscoe's motion for acquittal of first degree murder based on insufficiency of evidence was denied. (See § 1118.1.) The parties stipulated that there was evidence of marijuana in his bloodstream. Briscoe put on expert evidence of his organic brain damage and argued that he lacked the capacity to form the mens rea required for either robbery or burglary. He also argued to the jury that Parovel's killing of Pina was not done in response to anything that he did.

Ultimately, the jury found Briscoe guilty of all three offenses and found all three firearm-use-enhancement allegations to be true. It also concluded that Briscoe was engaged in the crimes of robbery and burglary during the commission of the murder. He moved for a new trial, arguing that the trial court misdirected the jury in a matter of law and that the verdict was contrary to the law and the evidence. He sought a judgment of acquittal notwithstanding the verdict on the murder charge. (See § 1181, subd. 5.) The trial court denied the motion for new trial and the related motion for judgment notwithstanding the verdict. Briscoe was sentenced to an indeterminate term of life imprisonment without possibility of parole for the murder. The trial court also imposed a four-year consecutive term for the firearm use enhancement related to the murder charge. Terms for first degree robbery and first degree burglary and the related firearm-use-enhancement findings were stayed on multiple punishment grounds. (See § 654.)

## II. PROVOCATIVE ACT MURDER

### A. *Legal Principles*

First, Briscoe contends that he was improperly convicted of special circumstances murder under the provocative act murder doctrine. Under this

general claim of error, he raises several discrete issues—a challenge to the sufficiency of evidence; a claim that the trial court failed to properly respond to a jury inquiry; challenges to various instructions; a call for the abolition of the provocative act murder doctrine; and a claim that the statutory special circumstances found by the jury did not apply to the facts of his case. We consider each issue in turn, but first set forth the basic law that applies in cases such as this, when a crime victim shoots and kills an accomplice and the state seeks to hold a defendant responsible for the killing.

A provocative act murder case necessarily involves at least three people—in our case, the perpetrator of the underlying offense, an accomplice, and a victim of their crime. (See *People v. Superior Court (Shamis)* (1997) 58 Cal.App.4th 833, 845-846 [68 Cal.Rptr.2d 388] *(Shamis).*) Under the provocative act murder doctrine, the perpetrator of a crime is held vicariously liable for the killing of an accomplice committed by the third party. (See *People v. Gilbert* (1965) 63 Cal.2d 690, 705 [47 Cal.Rptr. 909, 408 P.2d 365], judg. vacated on other grounds (1967) 388 U.S. 263 [87 S.Ct. 1951, 18 L.Ed.2d 1178]; see also *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 135 [145 Cal.Rptr. 524, 577 P.2d 659]; *Taylor v. Superior Court* (1970) 3 Cal.3d 578, 582-583 [91 Cal.Rptr. 275, 477 P.2d 131], overruled on another ground in *People v. Antick* (1975) 15 Cal.3d 79, 92 fn. 12 [123 Cal.Rptr. 475, 539 P.2d 43].) By law, the felony-murder rule does not apply when an accomplice is killed at the hands of a crime victim rather than by the defendant. As such a killing does not occur in the perpetration of a felony, malice cannot be ascribed to the defendant under the felony-murder rule. (*People v. Gilbert, supra,* 63 Cal.2d at p. 703; *People v. Washington* (1965) 62 Cal.2d 777, 781 [44 Cal.Rptr. 442, 402 P.2d 130]; see *People v. Caldwell* (1984) 36 Cal.3d 210, 216 [203 Cal.Rptr. 433, 681 P.2d 274]; *In re Joe R.* (1980) 27 Cal.3d 496, 503-504 [165 Cal.Rptr. 837, 612 P.2d 927]; *Pizano v. Superior Court, supra,* 21 Cal.3d at p. 136; *Taylor v. Superior Court, supra,* 3 Cal.3d at p. 582; *People v. White* (1995) 35 Cal.App.4th 758, 763-764 [41 Cal.Rptr.2d 510]; *In re Aurelio R.* (1985) 167 Cal.App.3d 52, 57 fn. 2, 58 [212 Cal.Rptr. 868].) However, when the perpetrator of a crime— with a conscious disregard for life—intentionally commits an act that is likely to result in death and the crime victim kills in reasonable response to that act, the perpetrator is guilty of murder. In this situation, the killing is attributable—not merely to the commission of a felony—but to the intentional act of the perpetrator committed with conscious disregard for life. The victim's killing in self-defense is not deemed to be an independent intervening cause relieving the perpetrator of liability because the killing is a reasonable response to the dilemma thrust on the victim by the perpetrator's intentional act. (*People v. Gilbert, supra,* 63 Cal.2d at pp. 704-705; *In re Aurelio R., supra,* 167 Cal.App.3d at p. 58; see *People v. Caldwell, supra,* 36

Cal.3d at pp. 216-217 fn. 2; *In re Joe R., supra,* 27 Cal.3d at pp. 504-505; *Pizano v. Superior Court, supra,* 21 Cal.3d at pp. 134-135; *Taylor v. Superior Court, supra,* 3 Cal.3d at pp. 582-583; *People v. Gallegos* (1997) 54 Cal.App.4th 453, 459 [63 Cal.Rptr.2d 382]; *People v. Gardner* (1995) 37 Cal.App.4th 473, 478 [43 Cal.Rptr.2d 603].)

■ As with most criminal offenses, a provocative act murder has both a physical and a mental element that the prosecution must establish. (See § 20.) To constitute the actus reus of provocative act murder, the defendant must commit an act that provokes a third party to fire a fatal shot. The mens rea element is satisfied if the defendant knows that his or her provocative act has a high probability—not merely a foreseeable possibility—of eliciting a life-threatening response from the person who actually fires the fatal bullet. (*In re Aurelio R., supra,* 167 Cal.App.3d at p. 57; see *People v. Gallegos, supra,* 54 Cal.App.4th at p. 460; see also *In re Joe R., supra,* 27 Cal.3d at p. 505.) Cases often discuss these two elements in terms of whether the defendant committed a *provocative act* which *proximately caused* the killing. (See, e.g., *Shamis, supra,* 58 Cal.App.4th at p. 846; *People v. Gallegos, supra,* 54 Cal.App.4th at p. 457.)

The prosecution must establish that the defendant[5] committed a provocative act. (See *People v. Garcia, supra,* 69 Cal.App.4th at p. 1329.) In cases in which the underlying crime does not involve an intent to kill—offenses such as robbery[6] and burglary, the underlying crimes that the jury in Briscoe's case found that he had committed—the mere participation in the underlying criminal offense is not sufficient to invoke the doctrine of provocative act

---

[5]If a provocative act is committed by an accomplice who is later killed by a crime victim, that act cannot form the basis for a provocative act murder. As the accomplice cannot be guilty of murder in connection with his or her own death, so the defendant—who stands in the shoes of the accomplice—cannot be held vicariously responsible for such a killing. (*People v. Garcia* (1999) 69 Cal.App.4th 1324, 1330-1331 [82 Cal.Rptr.2d 254]; see *In re Joe R., supra,* 27 Cal.3d at p. 506 fn. 5; *People v. White, supra,* 35 Cal.App.4th at p. 765; *Shamis, supra,* 58 Cal.App.4th at p. 845; *People v. Mai* (1994) 22 Cal.App.4th 117, 120, 127-128 [27 Cal.Rptr.2d 141], disapproved on other grounds in *People v. Nguyen* (2000) 24 Cal.4th 756, 758 [102 Cal.Rptr.2d 548, 14 P.3d 221].)

The provocative act murder doctrine may also apply if the provocative act was committed by a surviving accomplice. (See *In re Joe R., supra,* 27 Cal.3d at p. 506 fn. 5; *People v. Garcia, supra,* 69 Cal.App.4th at p. 1331; *Shamis, supra,* 58 Cal.App.4th at p. 846.) However, as Briscoe's sole accomplice in this case was the murder victim Pina, we need not consider such cases.

[6]Much of the law of provocative act murder has evolved in robbery cases. (See *People v. Gallegos, supra,* 54 Cal.App.4th at p. 460; see also *In re Aurelio R., supra,* 167 Cal.App.3d at pp. 59-60.) In robbery cases, courts have consistently required the defendant to commit a provocative act beyond that necessary to commit the robbery in order to be held liable for a killing committed by a third party. (See, e.g., *In re Joe R., supra,* 27 Cal.3d at p. 506 fn. 6; *People v. Garcia, supra,* 69 Cal.App.4th at p. 1331.)

murder. The provocative act must be something beyond that necessary to commit the underlying crime. (*People v. Garcia, supra,* 69 Cal.App.4th at p. 1329, fn. 3; *People v. Gallegos, supra,* 54 Cal.App.4th at pp. 456-457; *In re Aurelio R., supra,* 167 Cal.App.3d at pp. 59-60; see *In re Joe R., supra,* 27 Cal.3d at p. 504.) In every robbery, the possibility exists that a victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken. To impose an additional penalty for the killing improperly discriminates between robbers, not on the basis of any difference in their conduct, but solely on the basis of a victim's response that the robber's conduct induced. (*People v. Washington, supra,* 62 Cal.2d at p. 781; *People v. Gallegos, supra,* 54 Cal.App.4th at p. 457.) However, circumstances set in motion by the defendant which are fraught with grave and inherent danger to life are sufficient to constitute a provocative act that allows a jury to raise an inference of malice. (*People v. Garcia, supra,* 69 Cal.App.4th at pp. 1329-1330 [firing weapon into ceiling of occupied room].)

█ A prosecution for murder requires a finding of malice. (*Shamis, supra,* 58 Cal.App.4th at p. 844; see *Pizano v. Superior Court, supra,* 21 Cal.3d at p. 134.) The malice necessary for provocative act murder is implied malice. (*People v. Cervantes* (2001) 26 Cal.4th 860, 867 [111 Cal.Rptr.2d 148, 29 P.3d 225]; *People v. White, supra,* 35 Cal.App.4th at p. 768.) Malice may be implied if the defendant commits an act with a high probability that it will result in death and does so with a base antisocial motive or a wanton disregard for human life. (*Pizano v. Superior Court, supra,* 21 Cal.3d at p. 134; *Shamis, supra,* 58 Cal.App.4th at p. 844 [second degree murder].) Unless the defendant's *conduct* is sufficiently provocative of a lethal response, it cannot support the finding of implied malice necessary for a verdict of guilt on a charge of murder. (*Taylor v. Superior Court, supra,* 3 Cal.3d at pp. 582-584; *People v. Garcia, supra,* 69 Cal.App.4th at p. 1329; *People v. Mai, supra,* 22 Cal.App.4th at pp. 120, 125; see *In re Joe R., supra,* 27 Cal.3d at p. 505.) Thus, a central inquiry in determining a defendant's criminal liability for a killing committed by a resisting victim is whether the defendant's conduct was sufficiently provocative of lethal resistance to support a finding of implied malice. (See *Taylor v. Superior Court, supra,* 3 Cal.3d at pp. 583-584; *People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1078-1079 [53 Cal.Rptr.2d 207].)

The prosecutor must also establish that the defendant's conduct proximately caused the killing. Courts use traditional notions of concurrent and proximate cause in order to determine whether the killing was the result of the defendant's conduct. (See *People v. Cervantes, supra,* 26 Cal.4th at pp. 866, 872; *People v. White, supra,* 35 Cal.App.4th at p. 765.) To be considered the proximate cause of the victim's death, the defendant's act must have

been a substantial factor contributing to the result, rather than insignificant or merely theoretical.[7] (*People v. Caldwell, supra,* 36 Cal.3d at p. 220; *People v. White, supra,* 35 Cal.App.4th at p. 765; *People v. Mai, supra,* 22 Cal.App.4th at pp. 120, 123, 128; see *Shamis, supra,* 58 Cal.App.4th at pp. 845-846.) A defendant's provocative acts must actually provoke a victim response resulting in an accomplice's death. (See *In re Joe R., supra,* 27 Cal.3d at pp. 505-508 [sufficiency of evidence case].)

The timing of the events is critical. By necessity, the provocative act must occur before a victim may make a lethal response. (See, e.g., *In re Joe R., supra,* 27 Cal.3d at p. 507 [ineffectual blows struck after victim initiated battle are not provocative acts].) There may be more than one act constituting the proximate cause of the killing. (See *People v. Caldwell, supra,* 36 Cal.3d at p. 219; *Shamis, supra,* 58 Cal.App.4th at p. 846.) If the defendant commits several acts but only one of them actually provoked a lethal response, only that act may constitute the provocative act on which culpability for provocative act murder can be based. (See *In re Joe R., supra,* 27 Cal.3d at pp. 507-508; *People v. Kainzrants, supra,* 45 Cal.App.4th at pp. 1077-1078.) When the chain of causation is somewhat attenuated, the jury decides whether murder liability attaches or not. (*People v. Gardner, supra,* 37 Cal.App.4th at p. 479; see *People v. Roberts* (1992) 2 Cal.4th 271, 321 [6 Cal.Rptr.2d 276, 826 P.2d 274], cert. den. 506 U.S. 964 [113 S.Ct. 436, 121 L.Ed.2d 356]; see also *People v. Cervantes, supra,* 26 Cal.4th at pp. 871-872 [proximate cause is typically jury question].)

### B. *Sufficiency of Evidence*

 In the first of his claims of error on appeal, Briscoe argues that there was insufficient evidence to prove beyond a reasonable doubt that he was liable for Pina's death at Parovel's hand under the provocative act murder doctrine. He argues that neither his handling of Rozadilla nor his pistol-whipping of Parovel constituted a provocative act beyond that necessary to commit the robbery itself. At trial, the court found that there was sufficient evidence to send the case to the jury when it denied his motion for an acquittal of first degree murder for insufficiency of evidence. (See § 1118.1.)

 When reviewing a claim of insufficiency of evidence, we must view the evidence in the light most favorable to the verdict and presume in

---

[7]As the California Supreme Court has held, the substantial factor test is an application of the general rule of *de minimis non curat lex*—that is, the law does not recognize trifles. (*People v. Caldwell, supra,* 36 Cal.3d at pp. 220-221; see Black's Law Dict. (7th ed. 1999) p. 443, col. 1; see also Civ. Code, § 3533.)

support of the judgment the existence of every fact that the trier of fact could reasonably deduce from that evidence. The test is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. We must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proof beyond a reasonable doubt of each essential element of the offense. Substantial evidence must be of ponderable legal significance, reasonable in nature, credible and of solid value. (*People v. Cervantes, supra,* 26 Cal.4th at p. 866; *People v. Caldwell, supra,* 36 Cal.3d at p. 217; *People v. Kainzrants, supra,* 45 Cal.App.4th at p. 1076.)

Briscoe argues that the only proper evidence we may consider on the issue of when Parovel was motivated to use lethal force is the direct evidence provided by Parovel's own testimony. The fact that the California Supreme Court needed only a robbery victim's testimony to establish the sequence of events for purposes of determining causation in a provocative act murder case does not compel the conclusion that this is the only evidence that a court may consider to make this determination. (See, e.g., *In re Joe R., supra,* 27 Cal.3d at pp. 506-508.) We need not limit ourselves to Parovel's testimony alone when considering whether substantial evidence supports the jury's implied finding that Briscoe committed a provocative act that in turn prompted Parovel to kill Pina. We may, of course, consider circumstantial evidence and reasonable inferences that may be drawn from the evidence presented to the jury, as well as direct evidence. (See *People v. Anderson* (1940) 37 Cal.App.2d 615, 619 [100 P.2d 348] [circumstantial evidence]; see also *People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139 [17 Cal.Rptr.2d 375, 847 P.2d 55].)

On appeal, Briscoe contends that his pistol-whipping of Parovel cannot constitute a provocative act because Parovel's fear for his life arose before the pistol-whipping occurred—when Pina took his weapon while the two men were still in the bedroom. He reasons that Pina's earlier act of relieving Parovel of his weapon while the two men were still inside Parovel's house was the act that provoked Parovel to commit the lethal act—not his subsequent pistol-whipping. The provocative act murder doctrine requires that the perpetrator of a crime intentionally commit an act that is likely to result in death and that prompts the crime victim to kill in *response* to that conduct. (*People v. Gilbert, supra,* 63 Cal.2d at pp. 704-705; see *People v. Cervantes, supra,* 26 Cal.4th at pp. 872-873.) Briscoe argues that there is insufficient evidence to support the conclusion that his conduct led Parovel to fear, prompting him to kill.

This argument is flawed, for several reasons. First, the record does not support Briscoe's claim that Parovel testified that "immediately after being

stripped of his gun by Pina, he began to fear for his life." At trial, Parovel testified that he was fearful while he was in the bedroom. He told the jury that Pina took his weapon while they were in the bedroom. However, he did not offer specific testimony—as Briscoe seems to suggest—that the loss of his weapon *caused him* to immediately fear *for his life*. Parovel testified that when he opened the front door of his house, he was trying to get away from Pina and Briscoe because he feared them. Until this point, Parovel's fear is generalized. It is only after Briscoe pistol-whipped him that Parovel's fear rose to the level of a mortal fear. After being pistol-whipped and regaining control of a weapon, Parovel began to shoot because he was in fear for his life. Thus, the record supports the conclusion that the fear that prompted his lethal act arose as a result of Briscoe's pistol-whipping. These facts allow a jury to properly conclude that Briscoe's conduct was an intentional act that was likely to result in death and that prompted Parovel to kill in response. (See *People v. Gilbert, supra,* 63 Cal.2d at pp. 704-705.)

Even if Briscoe accurately summarized the factual sequence of events, his argument fails because it incorrectly assumes only one possible cause for Parovel's lethal act. Case law establishes that there may be more than one cause prompting an act of lethal resistance—that is, more than one provocative act. (See *People v. Caldwell, supra,* 36 Cal.3d at p. 219; *Shamis, supra,* 58 Cal.App.4th at p. 846; see also *In re Joe R., supra,* 27 Cal.3d at pp. 507-508; *People v. Kainzrants, supra,* 45 Cal.App.4th at pp. 1077-1078.) The fact that Pina's taking of Parovel's weapon could have been *one* cause of Parovel's ultimate act of shooting Pina does not preclude the possibility that the later pistol-whipping administered by Briscoe himself was yet *another* provocative act resulting in Parovel's shooting of Pina.

Briscoe's argument also defies common sense because it assumes that if a relatively minor provocative act occurs causing the victim to be placed in fear, a later and more egregious act may not be considered as a provocative act that caused the victim's subsequent lethal act. We find no support in the case law for such a proposition. Later acts that do not actually provoke lethal resistance are not properly considered provocative acts, but cases that hold this are not also authority for the different proposition that later acts escalating a victim's fear and increasing the desire to resist also cannot be a proximate cause of the lethal act. (See *People v. White, supra,* 35 Cal.App.4th at p. 766 [second act provokes response although first act does not]; see also *In re Joe R., supra,* 27 Cal.3d at p. 507 [victim testified that he barely noticed later punch].) Logic suggests that while losing one's weapon may make one uneasy about one's safety, being repeatedly beaten about the head with a pistol would likely escalate that uneasiness into a fear that might prompt a lethal response at the first available opportunity.

A pistol-whipping is also more likely than the simple act of relieving a victim of his or her own weapon to satisfy the requirement that a provocative act be a malicious act taken in conscious disregard for life. (See *In re Joe R., supra,* 27 Cal.3d at p. 507 [life-threatening act required].) In our case, Briscoe's pistol-whipping was also closer in time to the lethal act than the initial loss of Parovel's weapon. The pistol-whipping occurred immediately before Parovel's shooting of Pina. This suggests that Briscoe's later act was more likely to have prompted the immediate response leading to Pina's death. Parovel himself testified that he feared for his life when he was on the front lawn of his house. Once he gained control of a weapon after being pistol-whipped, he started shooting because he was in fear of his life. This evidence satisfies us that there is substantial evidence to support the jury's implied conclusion that Briscoe's life-threatening conduct provoked Parovel to commit a lethal act.

Briscoe also argues that his act of pistol-whipping Parovel could not constitute a provocative act because it was not an act beyond that inherent in the underlying crime of robbery itself. A provocative act must be one that goes beyond conduct that is inherent in the underlying felony. (*People v. White, supra,* 35 Cal.App.4th at p. 765.) In a provocative act murder case, we review whether the defendant committed an act in furtherance of the underlying crime that was life-threatening and that went beyond those acts necessary to accomplish the underlying offense. (*Ibid.* [robbery case].) It has long been established in provocative act murder cases that when the underlying offense is robbery, any conduct beyond that essential to the commission of the robbery may be a provocative act. Typically, robbery involves an oral or visual demand for money. A physical assault on the victim or an actual discharge of a weapon is not an element of the offense, but is an act beyond that necessary to complete a robbery. The beating of a robbery victim with a deadly weapon can constitute a provocative act if it was a life-threatening act. (*People v. White, supra,* 35 Cal.App.4th at pp. 766, 768 [beating with baseball bat]; see *People v. Gallegos, supra,* 54 Cal.App.4th at p. 461.) We are convinced that Briscoe's act of pistol-whipping Parovel could likewise be a provocative act beyond that inherent in the crime of robbery alone. Thus, we are satisfied that substantial evidence supports the jury's finding of a provocative act sufficient to satisfy the provocative act murder doctrine.

Briscoe also contends that his handling of Rozadilla did not constitute a provocative act. He argues that there was no evidence that Briscoe verbally threatened Parovel or that Parovel was sufficiently aware of Briscoe's conduct toward Rozadilla such that those acts might provoke Parovel to a lethal response. We find to the contrary, that his actions were an implied threat to harm Rozadilla if Parovel did not cooperate with Briscoe and Pina.

Briscoe placed Rozadilla in a headlock, pressed a gun to her head and took her into the bedroom where Parovel was. He held her in this manner while he and Pina demanded money of Parovel. Clearly, Briscoe used Rozadilla—then Parovel's girlfriend—as an implied hostage. A jury could properly find that he committed a provocative act when Briscoe pointed a weapon to Rozadilla's head and demanded that Parovel acquiesce to his demands. In so doing, he dramatically increased the risk to Rozadilla of injury or death by the manner in which he held her in a headlock and by the proximity of the weapon to her head. (See *People* v. *Kainzrants, supra,* 45 Cal.App.4th at p. 1077.) Thus, the jury had substantial evidence to support a finding that Briscoe committed not one, but two provocative acts.

## C. *Robbery at Gunpoint as Provocative Act*

 Next, Briscoe contends that the trial court erred by failing to properly respond to the jury's inquiry about whether robbery at gunpoint is—in and of itself—a provocative act. He argues that the answer is clearly "no," but that the trial court failed to instruct the jury so. As such, Briscoe reasons that the trial court abdicated its statutory duty to advise the deliberating jury on a point of law, violating his state and federal constitutional rights to due process and a fair trial when it refused to instruct the jury that robbery at gunpoint in and of itself did not constitute a provocative act. (See § 1138; see also U.S. Const., 6th Amend.)

During deliberations, the jury sought clarification from the trial court about whether a robbery at gunpoint constituted a provocative act in and of itself. The prosecutor argued that the jury should be told that robbery at gunpoint did constitute a provocative act in and of itself. Defense counsel argued that the jury's question was one of law to be answered in the negative, because the provocative act must be an act beyond the robbery itself. The trial court viewed the jury's inquiry as a factual question turning on the circumstances of each case. It noted that the underlying offense was robbery, not robbery at gunpoint. The trial court reasoned that if robbery could be committed without a gun, then the use of a gun might constitute the provocative act beyond that required to commit the underlying robbery in an appropriate case. Ultimately, the trial court told the jury that this was a factual determination for it to make and suggested that it review CALJIC No. 8.12 defining a provocative act.[8] In his motion for new trial, Briscoe argued that the trial court's response to this jury question was erroneous and

---

[8]The jury was instructed that in order to prove the killing was the result of Briscoe's provocative act, "each of the following elements must be proved: [¶] One, the crime of robbery and/or burglary or attempted robbery and/or burglary was committed; [¶] Two, during the commission of the crime, the defendant also committed an intentional provocative

that its reference to CALJIC No. 8.12[9] exacerbated the error. The motion for new trial was denied.

■ When the jury asks to be informed on any point of law arising out of the case, the trial court has a duty to help the jurors understand the legal principles that it is being asked to apply. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97, 279 Cal.Rptr. 276, 806 P.2d 1311], cert. den. 502 U.S. 972 [112 S.Ct. 449, 116 L.Ed.2d 467]; see § 1138.) The satisfaction of this obligation does not always require the trial court to elaborate on standard jury instructions already given. When the instructions were full and complete, the trial court has the discretion to determine what additional explanations are sufficient to satisfy the jury's request for information. Comments that diverge from the standard jury instruction are often risky to undertake. (*People v. Beardslee, supra,* 53 Cal.3d at p. 97.) ■ In this case, we must determine whether the trial court abused its discretion by reiterating the standard jury instructions as it did. (See, e.g., *People v. Noguera* (1992) 4 Cal.4th 599, 643 [15 Cal.Rptr.2d 400, 842 P.2d 1160], cert. den. 512 U.S. 1253 [114 S.Ct. 2780, 129 L.Ed.2d 892].)

Briscoe argues that the trial court's response was inadequate because it did not treat the jury's inquiry as a simple question of law clearly warranting a negative response. We disagree first with his interpretation that the inquiry was a question of law. (See § 1138 [trial court must assist jury on point of law].) The crime of robbery is a felonious taking of personal property accomplished by means of force or fear. (See § 211.) This offense can be committed without necessarily using a gun. (See *People v. White, supra,* 35 Cal.App.4th at p. 766 [robbery may consist of only oral or visual demands accompanied by a threat of force].) For example, a robber may use a different type of weapon or convey a sense of bodily intimidation in order to create a sense of fear or force. If anything, this analysis suggests—contrary to Briscoe's position—that the trial court could have responded to the jury's inquiry by telling the jurors that robbery at gunpoint is in and of itself a provocative act.

However, we think that the issue posed was properly characterized as a question of fact and that the trial court was prudent to respond to the jury's inquiry as it did. In the real world, robbery at gunpoint may or may not be a provocative act, depending on the degree to which the perpetrator uses the gun. One who robs another while doing no more than holding a weapon may

---

act; [¶] Three, the victim of the robbery and/or burglary in response to the provocative act killed a perpetrator of such crime; [and] [¶] Four, the defendant's commission of the intentional provocative act was a cause of the death of Shaun Pina." (See CALJIC No. 8.12.)

[9]We note that Briscoe originally requested that this jury instruction be given.

not have committed a provocative act, while a perpetrator who brandishes a deadly weapon, puts it to the head of a robbery victim, cocks the gun or pistol-whips the victim with it may have. Thus, the inquiry was one that turned, at least in part, on the particular facts of the case. In this case, the trial court declined to decide the factual issue before the jury, advising it instead of its obligation to perform this task and reminding it of the guidance already set forth in CALJIC No. 8.12 defining a provocative act as an act beyond that necessarily involved in a robbery. We are satisfied that the trial court did not abuse its discretion in responding as it did. (See *People v. Noguera, supra,* 4 Cal.4th at p. 643.) Thus, the trial court acted within the authority granted to it by section 1138.[10]

### D. *Jury Instructions*

#### 1. *Unanimity Instruction*

■ Briscoe raises three other claims of instructional error. First, he contends that the trial court erred by informing the jury that unanimity was not required about which intentional provocative act that he committed triggered liability for murder. He argues that a unanimity instruction was compelled under both the state and federal Constitutions. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 16.)

At trial, the People argued that two acts could constitute the required provocative act in this case—the handling of Rozadilla and the pistol-whipping of Parovel. During deliberations, the jury asked the trial court if all the jurors had to agree about which act constituted the provocative act that caused Pina's death. The People argued that unanimity was not required. Briscoe's attorney argued that the jury had to agree beyond a reasonable doubt on which act was the provocative act. She also sought a reference to CALJIC No. 8.12. The trial court advised the jury that if the jurors each found beyond a reasonable doubt that the defendant committed a provocative act, it was not required to unanimously agree on a particular provocative act. In his motion for new trial, Briscoe argued that unless there was jury unanimity about a provocative act, the verdict was defective. He reasoned that the trial court was required to instruct on CALJIC No. 17.01[11] sua sponte. The trial court denied the motion for new trial.

---

[10]In light of this conclusion, we need not address Briscoe's additional claim that the trial court violated his rights to due process and a fair trial by violating section 1138.

[11]CALJIC No. 17.01 reads: "The defendant is accused of having committed the crime of _____ . . . . The prosecution has introduced evidence for the purpose of showing that there is more than one [act] . . . upon which a conviction . . . may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of the [acts] . . . . However, in order to return a verdict of guilty . . . , all jurors

First, Briscoe argues that the California Constitution compels jury unanimity on which particular provocative act occurred in order to find him guilty of provocative act murder. (See Cal. Const., art. I, § 16.) Generally, California courts follow a version of the jury unanimity rule requiring the jury to agree about the ultimate issue of whether the defendant is guilty of the charged offense. Any jury disagreement on subordinate issues is considered irrelevant. Specifically, under this rule as it has been adopted in this state, it does not matter if the jury disagrees about any facts proving the defendant guilty, even if based on differing theories. (*People v. Davis* (1992) 8 Cal.App.4th 28, 40-41 [10 Cal.Rptr.2d 381].) "If each juror concludes, based on legally applicable theories supported by substantial evidence, that the defendant is guilty of the charged offense, the defendant is properly found guilty even if the jurors disagree about the particular theories or facts." (*Id.* at p. 34; see *People v. Santamaria* (1994) 8 Cal.4th 903, 918 [35 Cal.Rptr.2d 624, 884 P.2d 81] [if each juror is convinced beyond reasonable doubt that defendant is guilty of murder, jury need not agree unanimously on theory by which defendant is guilty]; *People v. Beardslee, supra,* 53 Cal.3d at p. 92 [same rule].) Briscoe's claim of error is, in essence, that the jury could have relied on different *facts* when unanimously concluding that he committed a provocative act, which in turn allowed the jury to find him guilty of murder under the provocative act murder doctrine. As the jury need not agree on the underlying facts in order for us to uphold a murder conviction, we find that the unanimity requirement did not apply.

Briscoe also contends that a unanimity instruction was compelled as a matter of federal due process. (See U.S. Const., 14th Amend.) He cites United States Supreme Court decisions in support of this argument. (See *Schad v. Arizona* (1991) 501 U.S. 624, 630-633 [111 S.Ct. 2491, 2496-2498, 115 L.Ed.2d 555] (plur. opn.); see also *Richardson v. United States* (1999) 526 U.S. 813, 817-818 [119 S.Ct. 1707, 1710, 143 L.Ed.2d 985].) In *Schad,* the high court concluded that there was no general requirement that the jury agree on preliminary facts underlying a verdict.[12] (*Schad v. Arizona, supra,* 501 U.S. at pp. 631-632 [111 S.Ct. at pp. 2496-2497]; see *People v. Jenkins* (2000) 22 Cal.4th 900, 1025 [95 Cal.Rptr.2d 377, 997 P.2d 1044], cert. den. 531 U.S. 1155 [121 S.Ct. 1104, 148 L.Ed.2d 975].) However, the high court held that due process precludes a state from punishing a criminal defendant under a statute so broadly defined that it is fundamentally unfair. (*Schad v. Arizona, supra,* 501 U.S. at pp. 632-633 [111 S.Ct. at pp. 2497-2498]; *Richardson v. United States, supra,* 526 U.S. at pp. 819-820 [119 S.Ct. at pp. 1710-1711].)

Briscoe urges that if we apply this fundamental fairness test, we will conclude that the trial court's failure to instruct on jury unanimity violates

---

must agree that [he] [she] committed the same [act] . . . . It is not necessary that the particular [act] . . . agreed upon be stated in your verdict."

[12]Briscoe concedes as much in his brief.

due process. The California Supreme Court has concluded otherwise. It specifically upheld our state's version of the jury unanimity rule—requiring jury unanimity only on the issue of whether the defendant is guilty of the charged crime, irrespective of whether the jurors agree on which of several theories of guilt provide the means to that ultimate conclusion—concluding that the rule "passes federal constitutional muster." (*People v. Santamaria, supra,* 8 Cal.4th at pp. 918-919; see *People v. Jenkins, supra,* 22 Cal.4th at pp. 1024-1025.) Thus, we find no federal constitutional error.

### 2. *CALJIC No. 8.12*

■ Next, Briscoe argues that CALJIC No. 8.12[13]—given by the trial court—neglected to inform the jury that for the provocative act murder doctrine to apply, Parovel's killing of Pina had to be a *reasonable* response to Briscoe's provocative act. He contends that in cases other than those involving hostages and human shields, the provocative act murder doctrine requires that the responsive act resulting in death be a subjectively reasonable response to the provocative act. He also urges us to conclude that the trial court had a sua sponte duty to so instruct the jury. At trial, Briscoe himself requested that this standard jury instruction be given, arguing that this be read to the jury instead of CALJIC No. 8.21 on felony murder. The People sought both instructions. The trial court reviewed both instructions and concluded that only CALJIC No. 8.12 on provocative act murder should be given. Briscoe did not seek to modify the standard jury instruction in the trial court. The jury was instructed that the killing had to be in response to Briscoe's provocative act, but not that Parovel's response had to be reasonable.

In essence, Briscoe argues that the trial court had a sua sponte duty to modify the standard jury instruction, which did not include the "reasonable response" language he now seeks. One of the seminal cases on the doctrine of provocative act murder included language suggesting that the victim's response to the defendant's conduct must be reasonable. (See *People v. Gilbert, supra,* 63 Cal.2d at p. 704.) However, the California Supreme Court has since returned the focus to the objective facts surrounding the defendant's provocative act rather than centering the doctrine's applicability on the question of whether the victim's response to that act was subjectively reasonable. (See, e.g., *Pizano v. Superior Court, supra,* 21 Cal.3d at p. 136;

---

[13]The jury was instructed that a "homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in *response* to an intentional provocative act by a perpetrator of the crime other than the deceased [perpetrator], is considered in law to be an unlawful killing by the surviving perpetrator[s] of the crime." (CALJIC No. 8.12, italics added.)

*People v. Gardner, supra,* 37 Cal.App.4th at pp. 478-479.) Now, courts use the term "reasonable response" as a shorthand expression of the principle that the killing must—on an objective view of the facts—be proximately caused by the defendant's acts. (See *People v. Gardner, supra,* 37 Cal.App.4th at pp. 478-479; see also *Pizano v. Superior Court, supra,* 21 Cal.3d at pp. 137-139.) This objective approach allows the jury to find culpability—and to imply malice—based on the defendant's conduct, not on the crime victim's state of mind. (See *Pizano v. Superior Court, supra,* 21 Cal.3d at p. 137.)

CALJIC No. 8.12 is the standard jury instruction on vicarious liability for a killing resulting from the acts of another. (See *People v. Gardner, supra,* 37 Cal.App.4th at pp. 480-481.) At one time, this standard instruction included the "reasonable response" language that Briscoe contends that the trial court should have added back in. (See *id.* at p. 480.) Since that time, the word "reasonable" has been deleted from CALJIC No. 8.12. (See *Gardner, supra,* at p. 481 [urging this change].) The language of the standard jury instruction properly rejects the wording that Briscoe urges. Thus, we conclude that the trial court had no sua sponte duty to add it.

### 3. *Lesser Included Offenses*

In his third claim of instructional error, Briscoe contends that his murder conviction must be reversed because the trial court failed to instruct the jury on the lesser included offense of involuntary manslaughter as he had requested. He contends that involuntary manslaughter is a lesser included offense of murder with implied malice and that the trial court committed prejudicial error when it refused to give this instruction. (See U.S. Const., 5th, 6th, 8th & 14th Amends.) In the trial court Briscoe sought a lesser included offense instruction on involuntary manslaughter. (See CALJIC No. 17.10.) The trial court refused to give this instruction, concluding that Briscoe could only be guilty of first degree murder under the provocative act murder doctrine—that he could not be guilty of any of the more typical lesser included offenses of murder.

Briscoe argues that if the jury believed that his organic brain damage rendered him incapable of forming the required mental state of implied malice for provocative act murder, it would have found him guilty of no more than involuntary manslaughter if it had been given that option. We need not address this issue because—assuming arguendo that the trial court erred by failing to give the requested jury instruction—any error was necessarily harmless. An error arising from the failure to instruct the jury on a lesser included offense is not subject to reversal unless the record establishes

a reasonable probability that the error affected the outcome of the trial. (See *People v. Breverman* (1998) 19 Cal.4th 142, 165 [77 Cal.Rptr.2d 870, 960 P.2d 1094] [sua sponte instruction should have been given in noncapital case]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den. 355 U.S. 846 [78 S.Ct. 70, 2 L.Ed.2d 55]; see also Cal. Const., art. VI, § 13.)

We conclude that there was no reasonable probability of a different outcome if the jury had been instructed as Briscoe urges it should have. The jury rejected the mental defense that is the underpinning of this claim on appeal. It had little difficulty in concluding that Briscoe was guilty of burglary and robbery during its first day of deliberations. The jury had been instructed that these were both specific intent crimes. It took two more days of deliberation before the jury was able to render a verdict on the murder charge. This offense also required the jury to find that Briscoe committed an intentional act.

At trial, Briscoe argued that he lacked the mental capacity to commit any of the three crimes because he had suffered organic brain damage. The timing of the robbery and burglary verdicts suggests that the jury rejected this defense almost immediately. The jury pondered the murder charge for a longer period of time, but given the close similarity of the mental defense offered to challenge the murder charge and that offered to challenge the allegations of other crimes, it is not reasonably probable that the jury was concerned about Briscoe's mental state during this time. As it is not reasonably probable that there would have been a different outcome if the jury had been given lesser included offense instructions, any error in failing to so instruct the jury was necessarily harmless under California law. (See *People v. Breverman, supra,* 19 Cal.4th at p. 165.)

Briscoe also argues that the trial court's failure to give this jury instruction violated his federal constitutional rights. (See U.S. Const., 5th, 6th, 8th & 14th Amends.) He admits that the California Supreme Court rejected this claim in 1998, but argues that since that time the United States Supreme Court has rendered a decision that places that California ruling in doubt. (See *People v. Breverman, supra,* 19 Cal.4th at pp. 165-169; see also *Neder v. United States* (1999) 527 U.S. 1, 11-12 [119 S.Ct. 1827, 1834-1835, 144 L.Ed.2d 35] [structural errors in jury instructions].) The California Supreme Court has reiterated *Breverman* since *Neder* was decided. (See *People v. Sakarias* (2000) 22 Cal.4th 596, 621 [94 Cal.Rptr.2d 17, 995 P.2d 152], cert. den. 531 U.S. 947 [121 S.Ct. 347, 148 L.Ed.2d 279].) Even if—as in *Sakarias*—we assume arguendo that federal constitutional error occurred when the trial court failed to instruct on a lesser included offense, we are satisfied that any error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17

L.Ed.2d 705, 24 A.L.R.3d 1065]; *People v. Sakarias, supra,* 22 Cal.4th at p. 621.) The jury's rejection of Briscoe's mental defense as to the robbery and burglary charges means that it necessarily rejected that defense as to the murder charge as well. Beyond any reasonable doubt, any error in failing to instruct on involuntary manslaughter could not have affected the outcome of the trial.

E. *Argument for Abolition*

 Briscoe argues that the court-created provocative act murder doctrine should be reexamined and abolished. He urges us to conclude that the rationale for using former section 189 to fix the degree of murder in a provocative act murder case is unconvincing and creates irrational distinctions among provocative act murder cases. (See U.S. Const., 8th Amend.; see also former § 189, as amended by Stats. 1993, ch. 611, § 4.5, pp. 3507-3508.) He characterizes the provocative act murder doctrine as "unique" in this country and criticizes it as "conceptually-flawed." In his motion to dismiss, Briscoe argued that he could not be convicted of this offense and so, was entitled to have the information dismissed insofar as it charged him with murder. The trial court denied this motion.

The California Supreme Court has set forth the provocative act murder doctrine as the law of this state. (See *People v. Gilbert, supra,* 63 Cal.2d at pp. 704-705; see pt. II.A., *ante.*) In 1984, the California Supreme Court was invited to reconsider the provocative act murder doctrine of liability for killings committed by one other than an accomplice on the theory that the clear trend of modern decisions leads away from the proximate cause theory of liability as a basis for felony murder. (See *People v. Caldwell, supra,* 36 Cal.3d at p. 222.) It declined to overturn this doctrine. (*Id.* at pp. 222-223.) As an intermediate appellate court, we have no authority to overrule our state's highest court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Thus, we reject this claim of error.

F. *Statutory Special Circumstances*

1. *Not Felony Murder*

 Briscoe also contends that two special circumstances set forth in former section 190.2 do not apply to his case. (See former § 190.2.) First, he argues that the felony-murder special circumstances codified in subdivision

(a)(17)[14] of former section 190.2 does not apply to a provocative act murder case as a matter of law. Noting that the United States and California Supreme Courts have referred to former section 190.2, subdivision (a)(17) as a "felony-murder statute" and that the felony-murder doctrine does not apply in a case of provocative act murder, Briscoe argues that felony-murder statutes such as former section 190.2, subdivisions (a)(17) and (d)[15] cannot apply in his case. (See *People v. Washington, supra,* 62 Cal.2d at p. 781 [no felony murder in provocative act murder case].)

We disagree with Briscoe's argument. Regardless of how subdivisions (a)(17) and (d) of former section 190.2 have been characterized in cases arising in nonprovocative act murder cases, the purpose of these statutes is to impose criminal liability on a defendant who commits an enumerated felony that results in the death of another. The California Supreme Court has held that limitations placed on the felony-murder doctrine do not shield a defendant from criminal liability for murder when the elements of the crime—homicide and malicious conduct—can be established without resort to the felony-murder doctrine. When a defendant, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and a victim kills in response to such act, the defendant is guilty of murder. (*People v. Antick, supra,* 15 Cal.3d at pp. 87-88.) The reasoning in *Antick* is similar to former section 190.2, subdivisions (a)(17) and (d), in that they seek to impose liability on a defendant who provoked a lethal response.

The language of the challenged statutes do not support this claim of error, either. Subdivision (a)(17) of former section 190.2 did not limit the special circumstances it described to homicides found to have been committed based on the theory of felony murder. It required only that the murder be committed while the defendant was committing a specified felony. (*People v.*

---

[14]This statute provided, in pertinent part, that the "penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found . . . to be true: [¶] . . . [¶] (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit . . . : [¶] (A) Robbery in violation of Section 211 or 212.5. [¶] . . . [¶] (G) Burglary in the first or second degree in violation of Section 460." (Former § 190.2, subd. (a)(17)(A), (G), as amended by Stats. 1995, ch. 478, § 2.)

[15]At the time of the offenses committed in this matter, this provision stated in part that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true . . . ." (See former § 190.2, subd. (d), as amended by Stats. 1995, ch. 478, § 2.)

*Kainzrants, supra,* 45 Cal.App.4th at p. 1081; see fn. 14, *ante.*) The fact that the defendant is convicted of murder under the application of the provocative act murder doctrine rather than pursuant to the felony-murder doctrine is irrelevant to the question of whether the murder qualified as a special-circumstances murder under former section 190.2, subdivision (a)(17). (*Kainzrants, supra,* at p. 1081 [death of accomplice].) The statute requires only that the murder be committed while the defendant was engaged in the commission of an enumerated felony. (*Ibid.*) Similarly, the language of subdivision (d) of former section 190.2 was not limited to felony-murder cases. (See fn. 15, *ante.*) It required an act committed in reckless indifference to life during the commission of a felony. (See former § 190.2, subd. (d).)

### 2. *Cooperative Relationship*

 Briscoe also asserts that former section 190.2, subdivision (d) does not apply because there was no cooperative relationship between the defendant and the actual killer. Former section 190.2, subdivision (d) punishes a major participant who acts with reckless disregard for life and who inter alia aids, abets, or assists in the commission of a statutorily enumerated felony when that felony results in death. (See fn. 15, *ante.*) A plain reading of the language of the statute shows that the cooperative relationship required by subdivision (d) must occur in the commission of the felony, not in the killing. As Briscoe assisted in the commission of the robbery and the burglary, former section 190.2, subdivision (d) applies to this case.

### 3. *Causation*

Briscoe also contends that subdivision (d) of former section 190.2 does not apply because that provision requires the killing to result from the felony and the provocative act murder doctrine requires the killing to result from an act beyond the underlying felony. This claim of error ignores the fact that there can be more than one proximate cause of a killing. (See *People v. Caldwell, supra,* 36 Cal.3d at pp. 219-220; *Shamis, supra,* 58 Cal.App.4th at p. 846.) The jury was instructed that there could be more than one cause of death and that it could not find the special circumstances allegation to be true unless it found that Briscoe's commission of a felony with reckless indifference to life resulted in Pina's death. (See CALJIC Nos. 3.41, 8.80.1 (1997 rev.).) On these facts, the jury could have concluded that Parovel shot Pina as a response to both the robbery and burglary and the provocative acts that Briscoe committed.

### 4. *Taking of Innocent Life*

Finally, Briscoe argues that subdivisions (a)(17) and (d) of former section 190.2 do not apply in his case because Pina's death did not result in the

taking of innocent life. He reasons that because the United States Supreme Court referred to *innocent* life twice in its *Tison* decision, that the murder victim's innocence is a required element for the constitutional application of felony-murder statutes. (See *Tison v. Arizona* (1987) 481 U.S. 137, 152, 154 [107 S.Ct. 1676, 1685, 1686, 95 L.Ed.2d 127].) We disagree with this reasoning. The high court did not use this term when it set out the issue in *Tison,* nor in its holding. Answering the question whether the Eighth Amendment prohibited the imposition of the death penalty on a major participant in a crime whose mental state was one of reckless indifference to the value of human life, the court held that these two elements established culpability sufficient to constitute a capital crime. (See *Tison,* at pp. 152, 158 [107 S.Ct. at pp. 1685, 1688].) We are satisfied that the United States Supreme Court's use of the term *innocent* life elsewhere in its decision was incidental and does not limit its holding. Thus, Briscoe's claim of error is meritless.

### 5. Cruel and Unusual Punishment

Briscoe also makes a more general assault on subdivisions (a)(17) and (d) of former section 190.2, contending that they violate the federal constitutional prohibition against cruel and unusual punishment by creating too broad a class of persons eligible for the death penalty. (See U.S. Const., 8th Amend.) The United States Supreme Court permits a state to impose the death penalty on an accomplice to felony murder when the accomplice is guilty of "major participation in [a] felony committed, combined with reckless indifference to human life." (*Tison v. Arizona, supra,* 481 U.S. at p. 158 [107 S.Ct. at p. 1688].) That court held that a statute making such a defendant culpable and punishable by death does not violate the Eighth Amendment's proscription against disproportionate sentences. (See *id.* at pp. 148, 157-158 [107 S.Ct. at pp. 1683, 1687-1688].) As former section 190.2, subdivisions (a)(17) and (d) combine to apply only if the defendant committed an enumerated felony and acted in reckless indifference to human life, the statute satisfied the Eighth Amendment. The application of these statutes in the context of a provocative act murder case also requires both of these elements—the commission of a serious offense and an act committed with conscious disregard for life. (See *People v. Gilbert, supra,* 63 Cal.2d at pp. 704-705.) Thus, its application in our case does not violate the Eighth Amendment.

Having reviewed the cited case law and the language of the statutes, we are satisfied that former section 190.2, subdivisions (a)(17) and (d) apply to a provocative act murder case. The murder of Pina was committed during Briscoe's commission of robbery and burglary as a result of Briscoe's provocative acts. Thus, it qualifies as a special circumstances murder under

former section 190.2, subdivisions (a)(17) and (d). Accordingly, we reject or find harmless each of Briscoe's assertions of error based on the application of the provocative act murder doctrine.

## III.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI. REMITTITUR

The amended abstract of judgment is ordered corrected to reflect a six-year term for first degree robbery and to reflect that the sentences for robbery and burglary are to run concurrently, with each sentence stayed pursuant to section 654. The abstract is also ordered corrected to delete the $10,000 restitution fine imposed pursuant to section 1202.45. The corrected abstract shall be sent to the Director of the Department of Corrections. In all other respects, the judgment is affirmed.

Sepulveda, J., and Kay, J., concurred.

A petition for a rehearing was denied October 17, 2001, and appellant's petition for review by the Supreme Court was denied January 3, 2002. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 568.