Filed 12/27/23  P. v. Oeurn CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br>v.<br>SAUN OEURN,<br>Defendant and Appellant. | A164985<br><br>(Alameda County<br>Super. Ct. No. 171030A) |

Defendant (appellant) Saun Oeurn appeals from an order denying his petition for resentencing under former Penal Code section 1170.95 (now section 1172.6) after a jury found him guilty of first degree murder.[1]  The trial court denied the petition on the ground that Oeurn failed to establish a prima facie case for relief, because the jury was not instructed on a natural and probable consequences murder theory but was instructed on a theory of provocative act murder.  Oeurn contends the trial court erred, claiming it improperly relied on the statement of facts in this court's prior opinion that had rejected Oeurn's appeal from his convictions, and insisting provocative act murder does not preclude relief under the resentencing statute.

---

[1]     All statutory references are to the Penal Code.  Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6.  (Stats. 2022, ch. 58, § 10.)

1

We will affirm the order. The trial court did not make factual findings based on the statement of facts in the prior appeal, and the provocative act murder doctrine is still a viable theory for murder despite changes in the law under Senate Bill No. 1437 (SB 1437) and Senate Bill No. 775 (SB 775).

## I. FACTS AND PROCEDURAL HISTORY

In February 2014, the Alameda County District Attorney filed a second amended Information charging Oeurn (and his co-defendants Phon Mey, Scott Moeun, Aaron Kheav, and Danny Vo) with the murder of Jordan Chhit (§ 187, subd. (a); count 1), the attempted murders of Lana Turn, Von Neak, and Saravy Phournsopha (§§ 187, subd. (a), 664; counts 2-4), and shooting at an inhabited dwelling (§ 246; count 5).

As to each count and as to all defendants, the Information alleged multiple firearm and great bodily injury enhancements (§§ 12022.5, subd. (a), 12022.53, subds. (b)–(d), (g), 12022.7, subd (a)).

### A. Trial

Oeurn, Mey, Moeun, and Vo were tried before a jury.[2] Prior to the verdict, the trial court dismissed count 4 (attempted murder of Phournsopha) and struck the enhancements for inflicting great bodily injury (§ 12022.7, subd. (a)) as to all counts.

#### 1. Trial Evidence[3]

Oeurn, Kheav, Mey, Moeun, and Vo, as well as Chhit and Alex Thum, were members or associates of the Asian Streetwalkers gang (ASW) in

---

[2] Kheav entered a plea in exchange for giving truthful testimony at the trial, but he declined to testify and the plea agreement was rescinded. Kheav later entered a plea of no contest to second degree murder.

[3] The summary of trial evidence is taken from this court's 2017 opinion in appeal number A147159 by Oeurn and Mey. (*People v. Oeurn* (Nov. 29, 2017, A147159) [nonpub. opn.]; see Cal. Rules of Court, rule 8.1115, subd. (b)(2).) The parties refer to the 2017 opinion's statement of facts in their

Oakland. On January 28, 2012, they learned that members of ASW had been attacked by members and associates of a rival gang, the Oak Town Crips (OTC), at a shooting near the site of a party attended by OTC members.

The ASW group gathered at the home of Thum's girlfriend. Mey was armed with a semiautomatic rifle with an extended banana clip; Oeurn, Kheav, Moeun, Vo, and Chhit were each armed with semiautomatic pistols. Oeurn drove the group (except Thum) to a location near the party and remained inside the van while the others walked down the street to a location across from the party.

One of the party attendees, Von Neak, saw the ASW group staring at the house and Mey holding a rifle. Neak assumed a defensive position and removed his .40 caliber semi-automatic pistol from its holster, keeping it pointed down, and began to load it. An ASW member standing next to Mey stepped forward and fired at Neak; the group fired more shots at Neak, striking him in the chest. Neak returned fire and was later taken to the hospital and survived.

During the gunfight, Mey, Moeun, Vo, Kheav and Chhit fired their weapons. Mey fired 35 to 38 rounds from his rifle, and the others fired more than 50 additional rounds. A group from the house party returned fire, fatally wounding Chhit. Another associate of OTC was wounded in the shootout as well.

---

appellate briefs, although Oeurn does so for "informational purposes only." In April 2023, Oeurn filed a request for judicial notice of the clerk's transcript and docket in appeal number A147159 and our opinion in that appeal. We deferred our ruling pending our consideration of the merits. We now grant the request.

## 2. Verdict and Sentence

In August 2015, the jury found Oeurn and Mey guilty of first degree murder under the provocative act murder doctrine, as well as the attempted murder of Neak and shooting at an inhabited dwelling. They were acquitted of the remaining attempted murder charge. The jury found the firearm enhancements alleged against Oeurn not true and the firearm enhancements alleged against Mey true. In December 2015, the trial court sentenced Oeurn to 25 years to life, and Mey was sentenced to 60 years and eight months to life.[4]

## B. Oeurn's Appeal (A147159)

Oeurn appealed. In November 2017, we concluded that the trial court had not properly instructed the jury on the premeditation requirement for first degree murder. We gave respondent the option of retrying the murder counts or having that conviction reduced to second degree murder. The prosecution elected to accept the reduction to second degree murder.

## C. Oeurn's Resentencing Petition

In 2018, SB 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 842.) It accomplished this by, among other things, amending section 189.

---

[4]     The jury did not reach verdicts as to Moeun and Vo, and the trial court declared a mistrial as to them. They later entered guilty pleas to various charges including voluntary manslaughter.

SB 1437 also created section 1170.95, which established a procedure for defendants convicted of murder under the old law to seek resentencing in the trial court if they believe they could not be convicted of murder under the amendment to section 189. (Stats. 2018, ch. 1015, § 4.) As clarified by case law and subsequent statutory amendments, the procedure is essentially as follows. If the petition is properly pleaded, the trial court appoints counsel for the petitioner upon request. The trial court conducts an initial analysis, with briefing by the parties, to determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of the statute. If the prima facie showing is made, the trial court issues an order to show cause and conducts an evidentiary hearing, at which the prosecutor bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for relief. (§ 1172.6, subds. (c)-(d); see *People v. Lewis* (2021) 11 Cal.5th 952, 961–967 (*Lewis*).) [5]

On September 10, 2019, Oeurn filed a petition for resentencing pursuant to section 1170.95. He alleged that he could no longer be convicted of murder due to the recent changes in the law.

The trial court appointed counsel for Oeurn and requested briefing. (§ 1172.6, subds. (b)(1)(C)(3), (c).) In his brief, the prosecutor asserted that Oeurn could still be convicted of murder because he acted with implied malice when he aided and abetted the accomplices who committed the provocative act. Meanwhile, Oeurn conceded that he "was convicted by a jury in 2015 of

---

[5] Effective January 1, 2022, SB 775 amended section 1170.95 to expand its scope and clarify its procedures. (Stats. 2021, ch. 551.) The parties to this appeal implicitly assume that the amendment applies to Oeurn's 2019 resentencing petition, because his appeal is not yet final. (*People v. Basler* (2022) 80 Cal.App.5th 46, 56.) As mentioned earlier, section 1170.95 was renumbered as section 1172.6 effective June 2022. In the Discussion section of this opinion, we refer to the relevant statute as section 1172.6.

. . . the first-degree murder of Jordan Chhit *under a provocative act murder theory*." (Italics added.) Nevertheless, he claimed the jury found him guilty of "murder based upon shooting at an inhabited dwelling and the natural and probable consequences doctrine."

The prosecutor filed a supplemental brief, arguing that the statute "does not provide resentencing relief for a person convicted of murder under a provocative act theory," because the theory ensures that malice is not imputed to a person based solely on his participation in a crime. In response, Oeurn filed a supplemental brief, contending the "record explicitly establishes" that he was "convicted of provocative act murder based upon malice being imputed to him through the natural and probable consequences doctrine."

On March 18, 2022, the trial court held a hearing and denied the petition. Based on the record, including the jury instructions given at the trial, the court concluded that the jury was not instructed on a natural and probable consequences theory, and that the provocative act murder doctrine remained a viable theory of murder after the amendments to the murder laws. Oeurn had therefore not established a prima facie case for relief.

Oeurn filed a timely notice of appeal.

## II. DISCUSSION

At the prima facie stage, the trial court denies a resentencing petition under section 1172.6 if the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) A petitioner is ineligible for relief as a matter of law if the record of conviction shows that he or she was not convicted under any theory of liability affected by SB 1437's amendments to the law of murder.

6

Thus, if the jury instructions show that the jury was not instructed on the natural and probable consequences doctrine or felony murder doctrine, the petition must be denied without issuance of an order to show cause. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677.)  Likewise, if the record of conviction shows that the murder conviction is necessarily based on a theory of liability that remains valid under SB 1437—such as actual malice—then the petition must be denied.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055–1059.)  A finding of ineligibility may be based on a legal holding or explanatory statement from a prior appellate opinion concerning the conviction, so long as the trial court does not engage in factfinding based on the prior opinion.  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

Oeurn contends the trial court erred in denying his resentencing petition at the prima facie stage because the record of conviction did not establish his ineligibility for relief as a matter of law.  First, he argues that the court conducted the prima facie analysis improperly.  Second, he argues that his conviction for provocative act murder did not bar relief as a matter of law.  He is incorrect on both points.

A.  The Trial Court Did Not Act Improperly

Oeurn urges that the trial court improperly relied on the statement of facts that this court provided in its prior opinion.  He further contends the trial court engaged in impermissible factfinding and weighing of the evidence.  His arguments are meritless.

1.  The Trial Court Did Not Rely on the Statement of Facts

Section 1172.6, subdivision (d)(3) provides that, at the evidentiary hearing, a resentencing court can consider the "procedural history" set forth in a prior opinion.  Appellate courts have interpreted this to bar the trial court from relying on the statement of facts in such opinions.  (See *People v.*

7

*Clements* (2022) 75 Cal.App.5th 276, 292 ["trial judges should not rely on the factual summaries contained in prior appellate decisions" when the petition "reaches the stage of a full-fledged evidentiary hearing"].) Some courts of appeal have held that the prohibition also applies at the prima facie stage. (E.g., *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [factual summary in appellate opinion may not be considered].)

Oeurn, citing pages 10 through 12 of the reporter's transcript, contends the trial court "relied to a large degree on the prior appellate opinion's statement of facts." Citing the same pages, he contends "the trial court ruled that appellant was guilty on [*sic*] provocative act theory based on the factual summary of the unpublished opinion."

Oeurn is incorrect. The trial court did not rely on the appellate opinion's statement of the underlying facts of the crime at all. Oeurn does not identify any comment by the trial court suggesting such reliance, and nothing on the cited pages of the reporter's transcript supports his assertion.

The trial court did say that it *read* this court's opinion, noting it discussed the provocative act doctrine but did not mention aiding and abetting under the natural and probable consequences doctrine. Oeurn does not provide authority that a trial court is forbidden from reading the appellate opinion to help determine the theories on which the case was tried. (See *Lewis*, *supra*, 11 Cal.5th at p. 972 ["Appellate opinions . . . are generally considered to be part of the record of conviction].)

In his reply brief, Oeurn contends it is reasonable to assume that if the trial court read the appellate opinion, it must have read the facts, and there were no other facts presented for the court to rely on. But he misses the point. The point is that the record does not show the trial court *relied* on the summary of the facts of the underlying crimes in making its ruling.

(*Clements, supra*, 75 Cal.App.5th at pp. 292–293 [failure to identify any part of the prior appellate opinion that the trial court relied upon precludes overturning the ruling].)  Instead, it relied on the jury instructions, and thus the theories by which the jury could have found Oeurn guilty of murder, as established by the record of conviction.  After the prosecutor at the prima facie hearing stated that she reviewed her copy of the reporter's transcript, found the instruction on aiding and abetting, and noted that "natural and probable consequences was not given," the trial court stated:  "I reviewed a list of instructions that were given that I had at my disposal *in the Court's file*.  It did not include 3.0[2] of CALJIC [Principals—Liability for Natural and Probable Consequences], which I think is the natural and probable consequences instruction."  (Italics added.)

Indeed, our review of the record confirms categorically that the only theory of murder before the jury was provocative act murder.  The jury instructions in the appellate record did not include the CALJIC instruction on the natural and probable consequences theory, but they did include the instruction on the provocative act theory.  As stated in our prior opinion, Oeurn was convicted of provocative act murder.  Moreover, in his March 2020 opposition to the People's response to his petition for resentencing, Oeurn *admitted* that he was "convicted by a jury in 2015 of . . . the first-degree murder of Jordan Chhit *under a provocative act murder theory*."  (Italics added.)  He further asserted that the trial judge (actually, Mey's defense counsel) had stated that the only murder theory in the case was the provocative act doctrine.

### 2.  The Trial Court Did Not Find Facts or Weigh Evidence

At the prima facie stage of a section 1172.6 proceeding, the trial court must take the petitioner's allegations as true unless the record of conviction

9

contains facts refuting those allegations. (*Lewis, supra,* 11 Cal.5th at p. 971.) Oeurn contends "the trial court incorrectly engaged in fact-finding and weighing evidence as its basis for denying [issuance of] an order to show cause." He also argues that the court made credibility determinations.

Again, Oeurn provides no citation to the record that supports his position. To the contrary, the trial court stated that "*without getting into any credibility findings,* the jury simply wasn't instructed on felony-murder or the natural and probable consequences version of aiding and abetting." (Italics added.) Oeurn fails to establish error.

B. <u>Provocative Act Murder</u>

Oeurn contends the trial court erred "because defendants convicted under the provocative act theory are not categorically ineligible for section 1172.6 relief as a matter of law." He notes he was not the actual killer, and although he drove his co-defendants to a location near the shooting, he was not at the shooting. His argument is untenable.

"Under the provocative act doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim [of the provocation] kills in reasonable response to that act, the perpetrator is guilty of murder." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655 (*Gonzalez*).)[6] In other words, a provocative act murder occurs when the defendant's "unlawful conduct provokes another into committing the fatal act." (*People v. Cervantes* (2001) 26 Cal.4th 860, 867, fn. 10.) The defendant who committed the provocative act is deemed the legal cause of the resulting

---

[6] Oeurn states that *Gonzalez* was superseded by SB 1437 as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 868. Not so. *Wilson* explained how the *murder laws* changed with SB 1437, so that a defendant can no longer be convicted of felony murder without a showing of intent to kill or implied malice. (*Ibid.*)

death, and—important here—any *accomplice* in the underlying crime shares responsibility for the murder as an aider and abettor, even if the accomplice did not commit his own provocative act, *if* the accomplice acted with malice. (*People v. Mejia* (2012) 211 Cal.App.4th 586, 612 (*Mejia*).)

As Oeurn acknowledges, several courts of appeal have held that the provocative act doctrine survives the changes to the murder laws made by SB 1437. (See, e.g., *People v. Mancilla* (2021) 67 Cal.App.5th 854, 867–868 ["For good reason, the argument provocative act murder is properly understood as a subset of the natural and probable consequences doctrine for purposes of Senate Bill 1437 and section 1170.95 has been rejected by every court of appeal that has considered it. . . ."]; *People v. Swanson* (2020) 57 Cal.App.5th 604, 612–617 (*Swanson*); *People v. Johnson* (2020) 57 Cal.App.5th 257, 267–268 (*Johnson*).)

The conclusion that provocative act murder is still a viable theory is inescapable. The purpose of SB 1437 was to limit murder convictions to instances where the defendant personally harbored malice—a mens rea element. (See § 189, subd. (e).) Although provocative act murder can be based on vicarious *conduct* (the conduct of the provocateur), it has always required that the defendant *personally* harbor malice. (*Mejia, supra,* 211 Cal.App.4th at p. 603 [as to the mental element of provocative act murder, the defendant must personally possess malice when he causes the death through his provocative act or aids and abets the underlying crime of the provocateur who causes the death]; *Gonzalez, supra,* 54 Cal.4th at p. 655 ["[a] murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice"]; see *Swanson, supra,* 57 Cal.App.5th at pp. 613, 617 [provocative act doctrine requires that the perpetrator personally exhibit a conscious disregard for life].) Because

11

provocative act murder requires personal malice, it is consistent with the murder laws as amended by SB 1437.

Nevertheless, Oeurn contends, "[t]he enactment of Senate Bill 775 supersedes those decisions since the premise that the Senate Bill 1437 reforms are limited to those two theories [felony murder and the natural and probable consequences doctrine] can no longer serve as a reason for finding ineligibility for relief. The recent amendments extended the law's reach to include murder convictions based on theories 'other' than felony murder or the natural and probable cause theories." He is incorrect.

Effective January 1, 2022, "Senate Bill 775 amended section 1170.95 in several respects, including (1) clarifying that, in some circumstances, the same relief available to persons convicted of murder is also available to persons convicted of attempted murder or manslaughter [citations]; and (2) addressing various aspects of the petition procedure, including the petitioner's right to counsel, the standard for determining the existence of a prima facie case, the burden of proof at the hearing to determine whether a petitioner is entitled to relief, and the evidence a court may consider at that hearing . . . ." (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. omitted.) Nothing in SB 775 affected the rationale for excluding relief for persons convicted under the provocative act theory.

Oeurn refers to section 1172.6, subdivision (a)(1), which refers to a "complaint, information, or indictment . . . filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory *under which malice is imputed to a person based solely on that person's participation in a crime*." (Italics added.) But the provocative act theory is

12

not one in which "malice is imputed to a person based solely on that person's participation in a crime." (*Ibid.*; see *Gonzalez, supra,* 54 Cal.4th at p. 655.)

Oeurn contends "the provocative act doctrine pioneered a rationale for implying malice based on the commission of an additional act involving a high probability death will result." He insists, "[i]n a provocative act murder case, malice is imputed upon the defendant based on his or her commission of the provocative act." Again, he is wrong. "A murder conviction under the provocative act doctrine . . . requires proof that the defendant *personally* harbored the mental state of malice." (*Gonzalez, supra*, 54 Cal.4th at p. 655, italics added; *Johnson, supra,* 57 Cal.App.5th at p. 268.) While liability under the natural and probable consequences doctrine arose if a reasonable person in the defendant's position would have or should have known the charged offense was a reasonably foreseeable consequence of the act that was aided or abetted, there is no liability under the provocative act doctrine unless the defendant possessed a conscious disregard for life – implied malice. (*Swanson, supra*, 57 Cal.App.5th at p. 613.)[7]

Oeurn further argues that, due to the jury instructions given, the jury could have found him guilty of murder "solely because of his participation as the driver of a car that brought the actual perpetrators of the shooting near the scene." He notes that the instruction pursuant to CALJIC 8.12 told the

[7]     Oeurn asserts that "provocative act murder is a type of natural and probable consequences murder in which the defendant 'is held vicariously liable for the killing of an accomplice committed by the third party,' " quoting *People v. Briscoe* (2001) 92 Cal.App.4th 568, 581. But *Briscoe* did not say provocative act murder was a type of natural and probable consequences murder. It stated that a defendant is held vicariously liable for the killing of an accomplice committed by a third party if the defendant committed the provocative act *"with a conscious disregard for life"* – that is, implied malice. (*Ibid.*, italics added.) It did not address provocative act murder applied to an aider and abettor.

jury that "an aider and abettor to the underlying crime is equally liable for a provocative act committed by a surviving accomplice" but did not explicitly require implied malice for an aider and abettor.

Oeurn's argument is unavailing. Looking at the jury instructions as a whole, the jury was instructed that to be liable as an accomplice, the defendant must have had at least the same mental state as the perpetrator, and an intentional provocative act requires an intent to perform the provocative act with knowledge of the danger to, and with conscious disregard for human life, which is implied malice. Oeurn fails to establish error.

### III.  DISPOSITION

The order is affirmed.


CHOU, J.

WE CONCUR:


JACKSON, P. J.


SIMONS, J.


A164985

14