Filed 10/21/24  P. v. Cao CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PHAT NGUYEN CAO,<br><br>    Defendant and Appellant. | G062432<br><br>(Super. Ct. No. 93CF2314)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Andre Manssourian, Judge. Affirmed.

Heather Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

\*                \*                \*

Defendant Phat Nguyen Cao appeals from the trial court's denial of his petition for resentencing under former Penal Code section 1170.95[1] following a hearing on the merits of his petition. The trial court concluded Cao was ineligible for resentencing because he had committed murder under the provocative act doctrine. Cao contends there was insufficient evidence to conclude that he committed provocative act murder, but we conclude substantial evidence supports the court's finding. Accordingly, we affirm the order denying the petition.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

CHARGES AND GUILTY PLEA

In 1994, Cao, along with Tam Van Nguyen, was charged with the murder of the victim (§ 187, subd. (a); count one) and street terrorism (§ 186.22, subd. (a); count two). It was further alleged that both defendants were vicariously armed with a firearm and knew that another principal was personally armed (§ 12022, subd. (a)(1)) and that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

Cao pleaded guilty. The factual basis for his plea was set forth on the *Tahl* form as follows: "On 8-6-93 in Orange County I willfully and unlawfully entered a gunfight after lying in wait for my opponent, Doi Phung, knowing my actions would cause Doi Phung to use lethal force in response to my actions, causing Doi Phung to shoot and kill a person while attempting to shoot me. I did this crime for the benefit of Nip Family, a criminal street

_____

[1] Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6, without substantive change in the text. (Stats. 2022, ch. 58, § 10.) For the sake of simplicity, we refer to the current statute, section 1172.6. Subsequent undesignated statutory references are to the Penal Code unless otherwise indicated.

2

gang." Pursuant to his plea agreement, Cao pleaded guilty to counts one and two and admitted both enhancements. The court granted the prosecution's motion to reduce count one to second degree murder, stayed sentence on the street terrorism counts pursuant to section 654, and struck the enhancements. The court sentenced Cao to 15 years to life.

## II

### STATEMENTS TO PAROLE BOARD

Cao testified under oath before the board of parole hearings (the Board) twice, in 2002 and 2017.[2] A statement of facts originally prepared for the probation report was read into the record without objection at the 2002 hearing. According to that statement of facts, on the day before the incident, Phung and three other members of the Nip gang went to the residence of Cao's codefendant, Nguyen, regarding an intergang feud between Phung and Nguyen, both of whom were members of the gang. Nguyen was called out of his home, had a gun pointed to his head, and was assaulted by Phung and his associates.

As a result of this incident, members of the Nip gang accompanied Nguyen to a meeting with Phung set to be held at a church in Garden Grove on the evening of August 6, 1993. Cao, armed with a 9 millimeter semiautomatic pistol, went with Nguyen. At least six other people arrived at the church, several of whom were armed. According to the report, the intent of the individuals associated with Nguyen was to confront

---

[2] Cao challenged the admissibility of the transcripts at the hearing, which the court overruled. Although he does not pursue this issue on appeal, the transcripts were admissible. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 586.)

Phung in the church, disarm him, and physically assault him in retaliation for the incident at Nguyen's home.

Phung had brought several people to the church as his own support. A confrontation occurred, and shots were fired by Cao, Phung, and possibly others. A stray round hit the victim who was sitting in his car in a nearby parking lot. The victim was an innocent bystander.[3]

Cao admitted this statement of facts was essentially correct. He told the Board that he committed the crime, fired shots that night, and was responsible for the victim's death.

At the church, Cao's intent, and that of his companions, was to beat Phung up. He had expected shots to be fired at the meeting. He said that Phung shot at Cao and his companions first and he returned fire.

In 2017, Cao again admitted to his participation in the shooting. Cao stated he had learned that Phung had pulled a gun on a fellow gang member and beat him up, violating "the gang code." Cao called other gang members to tell them about Phung's actions. He arranged a meeting with Phung for the purpose of beating Phung up and jumping him out of the gang, because it was "gang law."

Cao admitted that the plan was to "pretend we talk to him and then we're going to disarm him and we're going to beat the shit out of him and jump him out of the gang." Three or four cars of people went to attack Phung. Cao was armed. Prior to the meeting at the church, Cao and other participants met at a nearby liquor store parking lot. Cao said they met at the parking lot so they could talk first, so there would not be confusion.

---

[3] Although the record is not crystal clear on this point, it seems that the bullet that struck the victim was from Phung's gun.

Cao was aware Phung was armed. When they arrived at the meeting, according to Cao, Phung shot first and Cao returned fire. Cao shot around five rounds. He described the situation "like a battle."

### III.

#### PETITION AND 2022 APPELLATE OPINION

In December 2020, Cao filed a petition under section 1172.6 seeking to vacate his second degree murder conviction and to be resentenced. The prosecution opposed, arguing Cao had pleaded guilty to a provocative act murder. The court denied the petition at the prima facie stage. (*People v. Cao* (Sept. 28, 2022, G060154) [nonpub. opn.].)

In an unpublished opinion, this court reversed. (*People v. Cao, supra,* G060154.) Because we found that whether Cao committed a provocative act murder was a question of fact, we remanded with directions to issue an order to show cause and to hold an evidentiary hearing.

### IV.

#### REMAND

The trial court held the evidentiary hearing on the petition in February 2023. The court admitted the transcripts from Cao's two parole hearings, the *Tahl* form, and the information. The parties argued the petition at some length.

After taking the matter under submission, the court found beyond a reasonable doubt that Cao's conduct that resulted in the victim's death qualified as a provocative act murder. Accordingly, the court denied Cao's petition. He now appeals.

5

DISCUSSION

I.

BASIC PRINCIPLES AND STANDARD OF REVIEW

At the evidentiary hearing on a section 1172.6 petition, the prosecution has the burden to prove beyond a reasonable doubt that the defendant is not entitled to relief. (§ 1172.6, subd. (d)(3).) On appeal, we review the court's factual findings for substantial evidence. (*People v. Keel* (2022) 84 Cal.App.5th 546, 556.) Under that standard, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt'" under current law. (*People v. Morales* (2020) 10 Cal.5th 76, 88.) We presume the existence of every fact the court as factfinder could reasonably deduce from the evidence in support of the court's order. (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

II.

PROVOCATIVE ACT MURDER

A provocative act murder occurs when a defendant commits a provocative act that causes the death of an accomplice or a third party. (*People v. Cervantes* (2001) 26 Cal.4th 860, 867.) "The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle . . . and the police, or a victim of the underlying crime, responds . . . by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*Id.* at pp. 867–868.)

"A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response." (*People v. Gonzalez* (2012) 54

6

Cal.4th 643, 655, superseded by statute on other grounds as noted in *People v. Lopez* (2023) 88 Cal.App.5th 566, 574.) "By necessity, the provocative act must occur before a victim may make a lethal response. [Citation.] There may be more than one act constituting the proximate cause of the killing. [Citation.] If the defendant commits several acts but only one of them actually provoked a lethal response, only that act may constitute the provocative act on which culpability for provocative act murder can be based." (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 584.)

Because provocative act murder requires a finding of malice, it is ineligible for relief under section 1172.6 as a matter of law. (*People v. Lee* (2020) 49 Cal.App.5th 254, 265.)

III.

SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S RULING

Cao argues that the evidence demonstrated that "he was not the instigator of [the] gun fight. [Citation.] It was Phung, not [Cao], who instigated a gun fight when Phung shot at [Cao]'s car as it drove towards the prearranged meeting place of the church parking lot. [Citation.] [Cao] had not displayed a weapon towards Phung, nor had he even parked, let alone gotten out of the car and walked towards Phung." He claims it was Phung, not him, who committed the provocative act by shooting at Cao's car before anyone had the opportunity to get out of their car.

Cao contends that the context of his acts should be considered, and we agree. And the context of these events are far more than what happened when Cao arrived at the church parking lot. It was Cao who took it upon himself to notify other gang members of what had transpired between Nguyen and Phung. He arranged the meeting with Phung, with the specific intent of beating Phung up and jumping him out of the gang for Phung's

7

violation of "gang code." Cao planned to "pretend we talk to" Phung, disarm him, and beat him up. Three or four cars full of people went to execute this plan, and a reasonable inference from the evidence is that Cao was one of the primary organizers of the plan. Cao was armed, he knew that Phung was armed, and he expected shots to be fired at the meeting.

Prior to going to the church, Cao and his companions met first at the nearby liquor store parking lot in order to talk first and avoid confusion. Cao admitted in his plea that his actions in the liquor store parking lot constituted "lying in wait."

Cao brought three vehicles full of fellow gang members to what was purportedly a "meeting." Phung had reason to believe that this was not going to be a peaceful encounter. Phung might have fired preemptively, but he had ample reason to believe that Cao and his companions were about to shoot at him. Taken together, Cao's actions that night went far beyond what was necessary to commit an assault. His choices provoked the gun battle that resulted in the victim's death. Accordingly, there was substantial evidence in support of the court's conclusion that Cao committed provocative act murder.

Further, although we need not discuss it here, we agree with the Attorney General that the court could also have found Cao guilty under a theory of implied malice murder.

## DISPOSITION

The order denying Cao's petition is affirmed.


                                        MOORE, ACTING P. J.

WE CONCUR:



GOETHALS, J.



MOTOIKE, J.